## Case No. 16,054a.

### UNITED STATES v. PLATT.

[1 Betts, D. C. MS. 9.]

District Court, S. D. New York. 1840.

CUSTOMS DUTIES—FRAUDULENT ENTRIES—FORFEITURES AND PERSONAL PENALTIES—REPEAL OF STATUTE—LIMITATIONS.

[1. Section 66 of the act of March 2, 1799 (1 Stat. 677), which provides, as a punishment for making entries under fraudulent invoices, that the goods, "or the value thereof to be recovered of the person making entry," shall be forfeited, was not impliedly repealed, at least so far as concerns the personal penalty, by any of the subsequent acts, and is still (1840) in force.]

[2. An intent to evade the payment of duties is essential to the maintenance of a prosecution for the personal penalty, and failure to aver the scienter renders the declaration fatally defective on demurrer; but the plaintiff will be allowed to amend as a matter of course.]

[3. It is not necessary to aver that the goods were invoiced below their actual value, for the statute requires the invoice to be at the "actual cost," by which is meant the purchase price.]

[4. The statute leaves it to the government to elect whether it will proceed for the forfeiture of the goods or for the personal penalty, and there is no requirement that there should be an attempt to proceed in rem, before a personal action can be maintained.]

[5. The limitation of three years contained in section 89 of the act was repealed and superseded by section 3 of the act of 1804 (2 Stat. 290), which declares that any person incurring any fine or forfeiture, "under the revenue laws of the United States," may be punished within five years, "any law or provision to the contrary notwithstanding."]

B. F. Butler, for the United States.
F. Cutting, for defendant.

BETTS, District Judge. This is an action of debt, brought under the 66th section of the act of March 2, 1799, to recover the value of goods imported by the defendant [John Platt] as a forfeiture declared by that act. The declaration is in 41 counts, upon so many different importations and entries made by the defendant in this port at different periods between the first day of September, 1834, and the 20th of March, 1839. The averment in each count is in substance that the respective entries were made in conformity to invoices produced by the defendant to the officers of customs, and that the goods were invoiced below their actual cost at the place of exportation, with intent to evade the payment of duties thereon.

The action was commenced in September, 1839. The defendant pleads the general issue to all the counts, and the statute of limitations to all charging the entry to have been made more than three years previous to the commencement of this suit, to which plea the plaintiffs demur. A general demurrer is also interposed by the defendant to all the counts. The validity of the two latter pleadings is now the subject of inquiry.

The defendant's demurrer rests upon two grounds: (1) That the 66th section of the act of 1799 is repealed, and (2) that, if the section is in force, the declaration is defective in substance, and that the plaintiffs can claim no judgment under it against the defendant. The 66th section being the substratum of the action, the leading inquiry in the case will be whether that provision is now in force. The enacting clause directly applicable to this issue is "that if any goods, wares or merchandize of which entry shall have been made in the office of a collector, shall not be invoiced according to the actual cost thereof at the place of exportation, with design to evade the duties thereupon, or any part thereof, all such goods, wares and merchandise, or the value thereof, to be recovered of the person making entry, shall be forfeited"; and the argument is that the provisions of various subsequent acts of congress (of 1818, c. 74, § 11 [3 Story's Laws, 1682; 3 Stat. 436]; of 1823, c. 147, §§ 13, 14 [3 Story's Laws, 1887; 3 Stat. 735, c. 21]; of 1828, c. 55, § 9 [4 Stat. 274]; of 1830, c. 147, § 4 [Id. 410]; and of 1832, c. 224, § 14),—by legal implication abrogate so much at least of the act of 1799 as subjects the importer to a personal penalty. These subsequent enactments have been carefully collated with the 66th section by Judge Hopkins in a recent case (U. S. v. 25 Cases of Cloth [Case No. 16,563]) and the conclusion to which he arrives is that the section remains in force even in respect to the forfeiture of the goods. If his reasoning is sound in respect to that branch of the section, it is of stronger force in regard to the personal penalty, because the subsequent enactments from which the repeal of the 66th section is sought to be deduced have all relation to the goods,—to the effect of a false valuation or invoice upon the importation itself. I do not feel called upon to weigh the very able reasoning of the judge upon the latter point, for even if his conclusion in that particular should be adopted here, or should be found not in correspondence with the decisions of this court or the circuit court of this circuit heretofore made on the same subject (and which might conclude this court), they would come clothed with impressive influence in elucidation of the other branch of the section, which has never been before brought in review in this court. No direct repeal of the 66th section is asserted, and the implication which it is supposed establishes such repeal is raised from after-enactments providing remedies and pointing out a course of procedure which it is asserted are inconsistent with the provisions of that section. Congress designates an alternative penalty for the offences created by the section,—i. e. the forfeiture of the goods, or the value thereof, to be recovered of the person making entry. These penalties are distinct and positive in their character, so that the modification or repeal of the one need not necessarily affect the validity and operation of the other. No one would contend, if congress at the next session had repealed the personal penalty, that the forfeiture of the goods was also abrogated as a necessary incident. So even of criminal offences, made punishable by fine or imprisonment, an after-act, withdrawing imprisonment or modifying the fine, is not regarded as affecting the other branch of the punishment.

These principles show that to derive a repeal of such alternative penalties by implication from subsequent provisions of law, those after-enactments must have relation to both branches of the penalty or the offence itself, upon which they are founded. The most careful examination of the acts subsequently passed has not enabled me to discern any provision having a necessary application to this personal penalty, or the basis on which it is founded. The goods are made subject to various processes of interpretation, to enhanced valuation and imports, and the party importing them to an examination on oath, but in every instance for the purpose of ascertaining whether the duties should not be increased beyond the amount payable upon the invoice or entry, or whether the goods themselves should not be forfeited. Every enactment points to the representation of the importer at the custom house, whether by invoice or entry, as a cardinal fact, conducing to fix the fate of the goods, either to be subjected to increased duties or to confiscation. The invoice is in no statute thrown out of view.

It is made an essential part of the importer's vouchers, and must be verified by

solemn oath, and, if not received with the goods, the party making the entry must swear he will produce it to the custom house whenever it comes to hand. The clear intent of congress, manifested in every import act, to hold the importer bound to exhibit a true invoice of his goods, and making the invoice a basis for entry or appraisement of the goods, supplies also a strong intendment that every section provided for securing the integrity of the instrument is to be continued and enforced. Congress might be induced from many considerations of policy or conveniency to waive the confiscation of goods because entered below their value, and be content with full duties thereon; but it is not to be inferred that such payment of duties would be regarded as expiating so gross a violence to the laws and the rights of the honest merchant, as making out and presenting a false invoice of goods with design to evade the payment of duties. To imply the repeal of a sanction thus fastened upon the party making the entry because a co-ordinate penalty attached to the goods so entered was modified or withdrawn would be giving an effect to such after-legislation more serious and broad than is recognized in any case cited on the argument which the court can discover. The judgment of the court in U. S. v. One Case of Hair Pencils [Case No. 15,924], on the 76th section, lays down principles in this respect as favorable to the defendant as any other decision of equally high authority, and the criterion pointed out by that decision is that the provisions of two acts upon the same subject-matter must be so differing that both cannot be carried into execution, in order to render the latter a repeal by implication of the former; and, applying that doctrine to this case, it is most manifest that no incompatibility or incongruity between the provision of the 66th section now under examination and any subsequent enactments interferes with its application or enforcement. I am accordingly of opinion that the personal penalty created by that section is now in force; and, the right of action therefore subsisting to the United States, the remaining considerations are whether it has been properly put in prosecution in respect to the form of proceeding and the period within which the action is brought. The objections to the structure of the declaration are that it does not aver the scienter of the defendant, or any mala fide intent on his part; that it does not aver the goods were invoiced below their actual value; nor that the collector had parted with possession of the goods when this suit was instituted.

The averments are so framed as to embody the provisions of the statute nearly in terms, and, though the general rule in pleading is that it is enough to follow the words of an act in setting out a cause of action or ground of defence (15 Johns. 188), yet in actions on penal statutes it is also a cardinal rule that every fact must be averred bringing the case within the intent of the act, and which is requisite to the support of the action. Com. Dig. "Action on Statute" (A, 3); Id., "Pleader" (C, 76); Goodwin v. U. S. [Case No. 5,554]. What circumstances, then, subject the party making an entry to a personal action for the penalty? The inverted form of expression used in the act may raise a doubt whether it does not look to the false invoice as the gist of the offence, and, when that is so constructed with design to evade the payment of duties, hold the goods entered or the party entering them subject to the penalty, without carrying forward the consideration of intent to the act of entry. It is certainly a familiar course of legislation to subject property to forfeiture in revenue cases, without regard to criminal participation of the owner in the act producing the forfeiture. The case before cited (U. S. v. One Case of Hair Pencils [Case No. 15,924]), is an instance of that mode of legislation; and there would therefore be no singularity in rendering the forfeiture of goods under the 66th section dependent upon the false invoicing, and a proceeding against goods might therefore be probably sustained without charging the owner with any fraudulent purpose himself, or knowledge of fraud in the act of his agents abroad. Does the act demand such construction when the action is against a party individually for the penalty? I have not been able to find any instance in the penal legislation of congress in respect to the revenue, which raises an offence against an individual and renders him punishable therefor where his criminal knowledge or intent is not made a cardinal ingredient: and I find that Judge Washington reads this section in the same sense.

In an action precisely similar to this, that judge decided that the offence in relation to the party was "the making of an entry upon an invoice below the actual cost with design to evade the duties," and held that the declaration was defective in substance for not containing an averment of such intent.

I think the language of the act will bear this interpretation and that even a construction more forced than that requires, might be sanctioned, to avoid the egregious injustice of subjecting a person to punishment for the fraudulent acts of another not charged to be known to or adopted by him. The declaration in this case charges that the defendant made entry, &c., and that the goods were invoiced in the invoice produced by the defendant in making the entry below their actual cost, with design to evade the duties. It does not aver that he made the invoice or participated in its preparation, and the penalty is demanded because of such entry, and for no other reason. The scienter or intent is no part of

the gravamen alleged against the defendant otherwise than in so far as he may by intendment of law stand chargeable with the fraudulent purposes of the one who invoiced the goods. The frame of the sentence is such as to admit without violence to the language the term "with design" to be applied distributively to the acts indicated and preceding it,—the one, that of invoicing the goods; the other, that of making the entry,— and it seems to me that the court is compelled to adopt such construction as it is at war with first principles to subject a party personally to the operation of punitive laws, who acts without a design to do wrong or knowledge of any transgression. It is therefore indispensable to the maintenance of a prosecution in personam for the penalty that the declaration should aver that the entry was made with design to evade the payment of duties. This defect is one of substance, and is fatal on general demurrer, or might be taken advantage of by writ of error. It is competent, however, to this court to permit an amendment of the declaration, and that will be allowed almost as matter of course, if there are not other objections which bar the action entirely.

The second objection, that the declaration does not aver that the goods were invoiced below their true value, cannot prevail. The uncertainty that rested on the construction of this part of the act of 1799, and which led to differing decisions before two eminent circuit courts (U. S. v. Sixteen Packages of Goods [Case No. 16,303]. Goodwin v. U. S. [supra]) was fully removed by the decision of the supreme court. [U. S. v. Amedy] 11 Wheat. [24 U. S.] 410. Actual costs in the 66th section must be understood to import the purchase price, and an averment that the goods were invoiced below cost does not give place for the implication that they might be notwithstanding invoiced at the market value or to any other uncertainty. The declaration, therefore, by using the language of the statute, has made the charge with all the requisite precision and certainty, and it becomes matter of proof under that averment whether the invoice represents the true purchase price.

The third general objection to the sufficiency of the declaration is that there is no averment that the goods were not remaining in the hands of the collector when the suit was instituted. This objection rests upon the supposition that the present action is allowed only in case the one in rem cannot be pursued. It is very clear that these penalties are not cumulative, and, if one has been enforced, that would be a full bar to a suit for the others, by whichever mode of procedure the penalty was first recovered. But there is nothing in the statute indicating a priority of resort to the goods. Manifestly, an exception to an information against the goods that no suit had been brought for the personal penalty would be nugatory and inapt, and there is upon the statute no authority for demanding that the first proceeding shall be against the goods which would not equally require it against the person. The election is left uncontrolled to the government to adopt either remedy, and it is by no means a legal certainty that the greatest advantage would always result from forfeiting the goods. Especially if the value to be recovered of the person making entry is the value abroad, it might well happen that would largely exceed the saleable products of the goods where condemned; but, without regard to the consideration which remedy might be the most beneficial, it is sufficient upon the point to observe that the law has left an election to the government in that behalf, which the court is clothed with no power to counteract or limit. "All such goods, &c., or the value thereof, shall be forfeited," is the penalty demanded by the act and given to the government, and either may be prosecuted and recovered to the omission of the other. This is so upon the well-established principle that any one of various remedies may be employed where either will enforce the right or obtain the satisfaction to which the party is entitled. 1 Dane, Abr. 5; Smith v. U. S. [Case No. 13,122]. The penalty created by the act might be sued for by the common-law information or the ordinary action of debt. 1 Dane, Abr. 5; Ex parte Marquand [Case No. 9,100]; Bullard v. Bell [Id. 2,121]; The Nancy [Id. 10,008]; Adams v. Woods, 2 Cranch [6 U. S.] 336. Debt being the form of suit, will not vary the application of the statute of limitations, for that has relation to the offence itself, and not to the mode by which it is prosecuted. Id.

The defendant contends that the 89th section of the act of March 2, 1799, limiting actions for penalties under that act to three years, applies to this case, and bars all suits on entries made more than 3 yrs. before the commencement thereof. The argument for the United States is that the act of March 26, 1804, § 3, enlarges the limitation to five years. The two clauses collated read as follows: "That no action or prosecution shall be maintained in any case under this act, unless the same shall have been commenced within three years next after the penalty of (qu. or) forfeiture was incurred." Act 1799; 3 Bior. & D. Laws, p. 222, § 89 [1 Stat. 696], "That any person or persons guilty of any crime arising under the revenue laws of the United States, or incurring any fine or forfeiture by breaches of the said laws, may be prosecuted, tried and punished provided the indictment or information be found at any time within five years after committing the offence or incurring the fine or forfeiture, any law or provision to the contrary notwithstanding. Act 1804; 3 Bior. & D. Laws, p. 611, § 3 [2 Stat. 290]. This latter section is included in an act entitled "An act in addition to the act entitled 'An act for the punishment of certain crimes against the United States,'" and

being passed in express relation to the act of 1790, the terms common to both acts are to be understood in the same sense. By comparing the two sections, it will be perceived that the act of 1804 has transcribed in substance that of 1790, with some slight inversion of the members of the section. The language applicable to the present inquiry is, "nor shall any person be prosecuted, tried or punished for any offence not capital, nor for any fine or forfeiture under any penal statute, unless the indictment or information for the same shall be found or instituted within two years from the time of committing the offence or incurring the fine or forfeiture aforesaid." 2 Bior. & D. Laws, p. 99, § 31 [1 Stat. 119]. The case of Adams v. Woods, 2 Cranch [6 U. S.] 336, before cited, was an action of debt for a penalty given by the act of March 22, 1794. The defendant plead in bar the above limitation of the act of 1790. The attorney general demurred, and placed his objection to the plea principally upon the point that the limitation had reference to crimes, or to prosecutions conducted in a criminal form, by indictment or information, and did not apply to actions of debt.

The court, after consideration, decided that the act applied to every prosecution, trial or punishment, and was not limited to any particular mode of proceeding, and accordingly embraced the action of debt as well as informations, because almost every fine or forfeiture under penal statutes may be recovered indifferently in either form of suit. That therefore the act is not pleadable in bar of the particular action, but of the offence. The same interpretation must be given to the act of 1804. It cannot be restricted to the form of proceeding, but applies to the subject-matter. The party is exempt from the penalty after the limitation has attached, but it may be demanded against him by debt or information within that period. But it is urged that this case does not fall within the provision of the act of 1804, the penalties created by the act of 1799 having a special limitation affixed to them by that statute; and the provision in the act of 1804, being in pari materia with that of 1790, should be construed as having relation only to the cases governed by the limitation of that act; and the act of February 28, 1839 (9 Bior & D. Laws, p. 963, § 4 [5 Stat. 322]), is referred to as supporting the argument. This latter statute, it is admitted by the district attorney cannot supply the rule of limitation to the cases embraced within the pleadings, having been passed subsequetly to the expiration of the three years set up as a bar in those cases; but it is supposed to indicate the understanding of congress at the time that the laws then existing did not reach the cases provided for by it. There seems but feeble ground for this implication, nor, if it could be fairly raised, would it outweigh the direct adjudication of the supreme court in determining the import and operation of the antecedent laws. It is unnecessary to speculate upon the effect of a positive declaration by congress, in determining the meaning or application of a statute antecedent to such declaration, but this court would never attach to a mere inference or implication consequences outweighing the express decision of the supreme court upon the very subject. The act of 1839 may very properly be considered corresponding with that of 1790 as construed by the supreme court, and only extending the period of limitation from two to five years to that class of cases, and in this view of the operation it can afford no aid to the defendant in the interpretation he claims for the acts of 1799 and 1804. The argument must then rest exclusively upon the force and extent of the language used in the act of 1804, and whether it comprehends the cases provided for specifically by the act of 1799, or it is to receive such interpretation as to leave the latter in full operation. In its terms it applies to every fine and forfeiture incurred by breach of the revenue laws, and would indisputably embrace the penalties under the act of 1799, if no provision respecting them had been inserted in that act. The whole inquiry, then, is resolvable into this position: whether a subsequent statute does not necessarily repeal an antecedent one upon the same subject-matter, when the provisions of both cannot be executed. This point, it appears to me, is too firmly settled as a rule of construction to require any elucidation or discussion. The case U. S. v. One Case of Hair Pencils [supra], settles the principle at least for this court.

I am accordingly of opinion that the plea is bad in setting up the limitation of the act of 1799 as the bar in this case, and that the suit is to be governed in this particular by the act of 1804.

Judgment. Ordered, judgment for the defendant upon the demurrer as to so much of the plaintiffs' declaration as charges the offence against the defendant without also alleging that it was committed with intent or design to evade the payment of duties, &c., with leave to the plaintiffs to amend their declaration in this behalf within ten days after the rendering of this judgment. Ordered, judgment for the plaintiffs on the demurrer to the defendant's plea of the statute of limitations, and also on all the causes of demurrer alleged by the defendant against the plaintiffs' declaration other than the one above specified. And it is further ordered that the defendant have leave to plead over within ten days after the rendering of this judgment, and that the taxable costs of the defendant on the judgment in his favor be allowed and deducted from the costs taxed in favor of the plaintiffs on the judgment in their favor.