Harry J. WILLIAMS,
Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
TRANSPORTATION and United States
Coast Guard, Defendants-Appellees.

No. 84–3874.

United States Court of Appeals,
Eleventh Circuit.

Feb. 14, 1986.

J. Michael Shea, Tampa, Fla., for plaintiff-appellant.

Robert B. Nicholson, Robert J. Wiggers, U.S. Dept. of Justice, Antitrust Div., Washington, D.C., for defendants-appellees.

Before HILL and ANDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

HILL, Circuit Judge:

This appeal involves a Coast Guard letter of warning issued to appellant following an administrative determination of negligence. Appellant challenges this civil penalty on

\* Honorable Reynaldo G. Garza, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

three grounds: the Coast Guard lacked jurisdiction to impose penalties on him under 46 U.S.C. § 1461(d) (1976),[1] the investigative and hearing procedures violated his constitutional rights and the administrative decision was not supported by substantial evidence.

## FACTS

Appellant holds a master's license from the United States Coast Guard, all-oceans, unlimited tonnage with an endorsement for piloting on the waters of Tampa Bay along with a Florida full pilot's license to pilot on Tampa Bay, which authorizes him to pilot vessels of all sizes, tonnages and nationalities. On February 6, 1980, appellant boarded the M/V THALASSINI MANA, a Greek vessel headed toward Tampa Bay. The M/V THALASSINI MANA was required to take a state pilot upon entering Tampa Bay and, while aboard, appellant was operating solely under the auspices of his state license. Upon boarding, appellant asked the master for the ship's "particulars," a maritime term of art which refers to a vessel's characteristics, including speed, draft, height and any unusual characteristics. The master responded but omitted the height of the jumbo boom; appellant saw the boom was up but assumed it would clear the Sunshine Skyway Bridge. Near the bridge, appellant became concerned and specifically requested the height, but it was too late; the jumbo boom struck a portion of the bridge's center span, damaging both bridge and vessel.

A Coast Guard investigating officer boarded the M/V THALASSINI MANA when it docked. On the basis of the investigative file, the Coast Guard Marine Safety Office concluded that the proximate cause of the accident was the master's negligence in failing to ensure the boom would clear the bridge but "[a] contributing cause of this casualty was negligence on the part of the pilot for his failure to correctly ascertain the height of the M/V

1. Title 46 was recodified in 1983. Pub.L. 98–89, 97 Stat. 500 (1983). We will cite to these statutory provisions as in effect at the time of the Coast Guard proceedings against appellant.

THALASSINI MANA prior to attempting to pass under the bridge." (R. at 353). This report recommended appellant be assessed a monetary penalty for violation of 46 U.S.C. § 1461(d) (1976) and was the basis for administrative proceedings against appellant.

Appellant filed this suit, seeking to enjoin the Coast Guard, claiming it lacked jurisdiction over him. The district court denied his motion for a preliminary injunction and the Coast Guard held an evidentiary hearing on this charge. The hearing officer subsequently issued a written decision finding a violation but concluding a monetary penalty was unwarranted and instead issuing a letter of warning. Appellant's appeal of this decision was denied by the Commandant of the Coast Guard. Appellant then amended his complaint in this action to add due process and evidentiary issues relating to the investigation and administrative hearing. The case was submitted to the district court on cross-motions for summary judgment with stipulated issues and facts. The district court granted summary judgment for the government, holding that the Coast Guard had jurisdiction, its procedures were constitutional and that substantial evidence supported the Coast Guard's findings of negligence.

## I

*Jurisdiction Under 46 U.S.C. § 1461(d)*

The primary issue in this case is whether 46 U.S.C. § 1461(d) (1976) applies to state-regulated pilots operating large commercial vessels. This section was originally enacted as part of the Federal Boat Safety Act of 1971 (the "Act"), Pub.L. 92–75, 85 Stat. 213 (1971). It provided that: "No person may use a vessel, including one otherwise

exempted under [46 U.S.C. § 1453(c) (1976)], in a negligent manner so as to endanger the life, limb, or property of any person." 46 U.S.C. § 1461(d) (1976). Appellant contests the Coast Guard's power over him on two grounds: Congress delegated exclusive regulatory authority over pilots to the states and the Federal Boat Safety Act does not apply to large commercial vessels.

■ Appellant's first contention is that section 1461(d) does not apply to state-licensed harbor pilots because the states have virtually exclusive regulatory power over pilots[2] under 46 U.S.C. § 211 (1976) which provided:

Until further provision is made by Congress, all pilots in the bays, inlets, rivers, harbors, and ports of the United States shall continue to be regulated in conformity with the existing laws of the States respectively wherein such pilots may be, or with such laws as the States may respectively enact for the purpose.

This argument misconstrues the effect of section 211 which does not grant states the *exclusive* power to regulate pilots, but merely allows state regulation until Congress provides otherwise.[3] Since section 1461(d) contemplates federal jurisdiction, the Coast Guard's jurisdiction over state-licensed pilots is consistent with section 211 if Congress intended to include them within the scope of section 1461(d). The comprehensive language of section 1461(d), which provides that "no person" may operate a vessel negligently, clearly demonstrates Congress' intent to cover all pilots, whether or not they were also subject to state regulation. The exercise of federal regulatory power in section 1461(d), does not usurp or detract from state regulatory power;[4] it is

---

2. Appellant argues the only exceptions to local regulation are pilotage on the Great Lakes, and inspected, machine-propelled coastwise seagoing vessels not sailing under register and not on the high seas, 46 U.S.C. §§ 216a, 364 (1976).

3. Recent amendments have clarified the state and federal roles regarding pilot regulation. Section 211 was recodified as 46 U.S.C. § 8501(a) and amended in 1984 for clarification. It currently provides: "Except as otherwise provided in this subtitle, pilots in the bays, rivers, harbors, and ports of the United States

shall be regulated only in conformity with the laws of the States." 46 U.S.C. § 8501(a) (Supp. I 1983 and 98 Stat. 2860, 2874). Section 2302(a), the recodified 46 U.S.C. § 1461(d) (1976), is within that subtitle.

4. The civil and criminal penalties contained in the U.S.C. §§ 1483–84 (1976) do not affect a pilot's state license. Congress only expressly preempted state regulation regarding performance and safety standards for boats and associated equipment. 46 U.S.C. § 1459 (1976).

simply concurrent regulation over commerce. The Act's legislative history indicates Congress intended to exercise concurrent jurisdiction with the coastal states in controlling the negligent use of vessels, preempting only state boat and safety equipment standards. S.Rep. No. 92–248, 92nd Cong., 1st Sess. *reprinted in* 1971 U.S.Code Cong. & Ad.News 1333, 1341. We hold 46 U.S.C. § 211 (1976) does not preclude federal regulation of state-licensed pilots.

Second, appellant argues section 1461(d) does not apply to pilots of commercial vessels because the purpose of the Act was to improve recreational boating safety. In interpreting a statute, the starting point is its language. The language of the Act and section 1461(d) does not support, and in fact refutes, appellant's argument. "Absent a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The Act's applicability section indicates the Act applies to "vessels" used on waters subject to the United States' jurisdiction. 46 U.S.C. § 1453(a) (1976). The Act defines "vessel" as including "every description of watercraft ... used or capable of being used as a means of transportation on the water." 46 U.S.C. § 1452(2). Where Congress intended to restrict a provision to small, noncommercial vessels, it used the term "boat," defined in 46 U.S.C. § 1452(1) (1976). *See e.g.,* 46 U.S.C. § 1454 (1976). Section 1461(d) was not restricted to persons operating "boats," it prohibits the negligent use of a "vessel," including those otherwise exempted by 46 U.S.C. § 1453(c). Moreover, the inclusion within section 1461(d) of vessels exempted by section 1453(c)(1) buttresses the conclusion that appellant was subject to this act while piloting the M/V THALASSINI MANA because one category of otherwise exempt vessels made subject to section 1461(d) is "foreign vessels temporarily using waters subject to United States jurisdiction...." 46 U.S.C. § 1453(c)(1) (1976).

Appellant cites the Act's declaration of purpose and policy, 46 U.S.C. § 1451 (1976), along with various citations to the Act's legislative history, to support his claim that Congress did not intend to include large commercial vessels within the scope of the Act. We do not find in these citations any clear indication of congressional intent sufficient to override the statutory language. On the contrary, the legislative history supports a broad reading of the word "vessel." [5]

The word 'vessel' is defined in broad context and is construed to include surface effect vehicles, such as hover-craft, operating over the water. 'Boats' are defined as a more limited category within the term 'vessels.' The distinction is necessary because certain aspects of the bill, notably those sections dealing with safety standards and equipment, pertain only to the category embraced by the term 'boat.' Other sections (e.g., those dealing with numbering), pertain to a broader category of vessels (i.e. undocumented vessels equipped with propulsion machinery). Still other provisions, (e.g., the prohibition against negligent operation), pertain to all vessels.

S.Rep. No. 92–248, 92nd Cong., 1st Sess. *reprinted in* 1971 U.S.Code Cong. & Ad. News 1333, 1337. Congress drafted section 1461(d) broadly to include all persons operating vessels; it did not restrict the scope to recreational boats. We hold that this Act gave the Coast Guard jurisdiction over appellant during his operation of the M/V THALASSINI MANA in Tampa Bay.

## II.

### Due Process

Appellant also contends several aspects of the Coast Guard's investigative

---

**5.** 46 U.S.C. § 2302(a) (Supp I 1983), which is the recodified section 1461(d), remains applicable to all persons and all vessels. The legislative history accompanying the recodification indicates that Congress intended to include "all vessels and not those solely engaged in recreational boating" and that this was not a substantive change from prior law. H.R.Rep. No. 98–338, 98th Cong., 1st Sess. 135 *reprinted in* 1983 U.S. Code Cong. & Ad.News 924, 947.

process and civil penalty proceeding violated his constitutional rights. We find his claims regarding lack of *Miranda* warnings and right to counsel,[6] improper use of the investigative file,[7] laches,[8] and lack of discovery procedures/witness unavailability [9] are clearly without merit. In addition, appellant argues the hearing violated the Administrative Procedures Act, 5 U.S.C. § 554(d) (1982), and due process because the same person both determined the evidence was sufficient to proceed against appellant, 33 C.F.R. § 1.07–20 (1985), and later served as the hearing officer. The record does not indicate that appellant ever raised this objection at the hearing or on appeal to the Commandant. As a result, he waived this claim. *United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952); *Kahlenberg v. I.N.S.,* 763 F.2d 1346, 1352 (11th Cir.1985).

**6.** Appellant claims he was entitled to warnings regarding his right to remain silent and his right to counsel because, if he was found to have violated 46 U.S.C. § 1461(d), he could have been found automatically guilty of a criminal violation and subject to imprisonment under 46 U.S.C. § 1483 (1976). This claim is clearly specious. Section 1461(d) provides that *grossly* negligent use subjects a person to the criminal penalties in section 1483; it does not provide for "automatic" guilt and punishment. Moreover, although the fifth amendment privilege against self-incrimination applies in civil proceedings, *United States v. Kordel,* 397 U.S. 1, 7–8, 90 S.Ct. 763, 766–67, 25 L.Ed.2d 1 (1970), the right to the *Miranda* warnings applies only to interrogation of a person while in custody or "otherwise deprived of his freedom by the authorities in any significant way...." *Miranda v. Arizona,* 384 U.S. 436, 477, 86 S.Ct. 1602, 1629, 16 L.Ed.2d 694 (1966). The Court clearly stated that "other general questioning of citizens in the fact-finding process" was not affected by this requirement. *Id.* Appellant does not claim he was or believed himself to be in custody during his interview with the Coast Guard investigator. Because no criminal proceedings had been initiated, appellant had no right to counsel during the investigatory process. *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964); *Brewer v. Williams,* 430 U.S. 387, 398–401, 97 S.Ct. 1232, 1239–41, 51 L.Ed.2d 424 (1977).

**7.** Appellant objects to the presence of unverified hearsay in the investigative file, claiming this material formed the Coast Guard's entire case. Hearsay is admissible in administrative hearings and may constitute substantial evidence if found reliable and credible. *Richardson v. Perales,* 402 U.S. 389, 407–08, 91 S.Ct. 1420, 1430–31, 28 L.Ed.2d 842 (1971); *School Board of Broward County, Florida v. Department of Health, Education and Welfare,* 525 F.2d 900, 906 (5th Cir.1976). Appellant has not directed his allegations of unreliability at any particular statement in the file nor has he contradicted any of the material facts on which the hearing examiner based his decision. Moreover, Williams' own written statement and testimony at the hearing comprise a major portion of the evidence before the agency.

Appellant also claims certain exculpatory materials in the investigative file were not contained in the hearing examiner's case file. The only material appellant specifically describes is a recommendation by one investigating officer that no further action be taken against appellant. Appellant cannot complain that it was not considered as evidence in his behalf because he declined the hearing officer's offer to consider this statement.

**8.** The accident occurred February 6, 1980; the initial investigation took place on that date but the Coast Guard did not notify appellant of the charges until June 3, 1980. Appellant claims this delay deprived him of his rights to discovery and cross-examination because the M/V THALASSINI MANA and crew left the area and the Coast Guard's investigative officer was transferred. First, we note the four month delay was well within the five year statute of limitations. 28 U.S.C. § 2462 (1982). Within the statute of limitations, more than the passing of time is required to set aside an agency action; we require a showing of prejudice. *Cf. FTC v. J. Weingarten, Inc.,* 336 F.2d 687, 692 (5th Cir. 1964); *EEOC v. Exchange Security Bank,* 529 F.2d 1214, 1216–17 (5th Cir.1976). Appellant has not demonstrated that he was prejudiced by the four month delay. Specifically, he has not shown that the M/V THALASSINI MANA or its master and crew remained in Tampa for more than a few days or that he was unable to contact the transferred Coast Guard investigating officer.

**9.** Appellant alleges his due process rights were violated because he was unable to conduct discovery and cross-examine witnesses. Appellant, however, did not request the hearing officer's assistance in obtaining the presence of any person, 33 C.F.R. § 1.07–50 (1985), and declined a continuance to attempt to contact witnesses. Although the hearing officer does not have subpoena power and master and crew of the M/S THALASSINI MANA were presumably outside the United States's jurisdiction, appellant does not allege how their presence would have affected the outcome of his hearing.

Finally, appellant makes a generalized, conclusory argument that he was entitled to heightened due process protections because his state pilot's license was at stake. This claim is speculative at best. The Coast Guard proceeding could not affect appellant's state license and he has not alleged that, as a result of the Coast Guard's decision, the state Board of Pilot Commissioners is likely to reconsider its prior determination not to proceed against appellant. As for appellant's federal license, the charge clearly indicated the maximum penalty would be a $500.00 fine; appellant's license was never subject to revocation in this proceeding and any allegation regarding potential future consequences is purely hypothetical. In this proceeding, appellant received notice of the Coast Guard's proposed action, 33 C.F.R. § 1.07–20(b) (1985); the evidence the hearing examiner would rely on, 33 C.F.R. § 1.07–30 (1985); a hearing prior to assessment of any penalty, 33 C.F.R. §§ 1.07–25, 1.07–55 (1985), at which he was able to present evidence, witness testimony and arguments, 33 C.F.R. §§ 1.07–50, 1.07–55 (1985), with the assistance of counsel, 33 C.F.R. § 1.07–40 (1985); a written decision from the hearing officer, 33 C.F.R. § 1.07–65 (1985); an appeal to the Commandant, 33 C.F.R. §§ 1.07–70, 1.07–75 (1985); and the right to judicial review. Appellant does not suggest what additional process was due and concedes he was afforded the same procedures held to satisfy due process in *United States v. Independent Bulk Transport*, 480 F.Supp. 474, 482 (S.D.N.Y.1979). We find here that the considerable procedural protections accorded appellant negate his bald contention that his constitutional rights were infringed. Accordingly, we conclude the procedures employed in appellant's hearing satisfied due process requirements.

### III.

#### Substantial Evidence

Appellant directs his final attack at the Coast Guard's decision which he claims was not supported by substantial evidence.

Specifically, appellant argues that his testimony and the evidence he presented regarding the master's breach of duty were sufficient to overcome the presumption of fault that normally attaches when a vessel strikes a stationary object and demonstrate that appellant was a careful and prudent pilot.

Substantial evidence is defined as

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ... This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

*Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (citations omitted). A reviewing court "must take into account whatever in the record fairly detracts from its weight," but it may not "displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951).

The crux of appellant's argument is that he presented evidence establishing that the master was negligent, thereby completely absolving him of responsibility for the accident. The Commandant did not ignore appellant's evidence; nonetheless he did not agree that the master's negligence exonerated appellant:

Undoubtedly, the master should have informed Captain Williams of the height of the jumbo boom along with the other particulars of the vessel. The master's failure to so inform him, however, did not *ipso facto* relieve Captain Williams of his duty to exercise reasonable care under the circumstances. Captain Williams, as well as the master, had a duty to take all reasonable precautions to en-

sure the safe maneuvering of the vessel through Tampa Bay.

(R. 361). The Commandant assessed appellant's performance of this duty based on the Coast Guard's violation report, appellant's statement on the Florida Marine Casualty Report and appellant's testimony, all of which indicated that appellant, an experienced pilot, saw that the jumbo boom was up, was not advised of its height by the Master and failed to ascertain its height before attempting to pass under the bridge.[10] None of appellant's evidence contradicts or rebuts this conclusion. We hold the Commandant's finding was based on substantial evidence.

AFFIRMED.

---

**10.** The Commandant's opinion discusses the evidence he relied on and his conclusions drawn from the evidence:

> The violation report and the attached materials submitted by the Coast Guard contain sufficient evidence to support a finding that Captain Williams was negligent in failing to ascertain the height of the vessel's jumbo boom prior to attempting to pass under the bridge. Both the Narrative Summary of the facts in the violation report and Captain Williams' response to item 20 in the Florida Marine Casualty Report indicate that your client saw that the jumbo boom was up, but was not advised of its height. Additionally, Captain Williams related in the State report that from his position on the bridge he "assumed" the vessel would clear the bridge. This evidence entitled the investigating officer and the Hearing Officer to reasonably infer that Captain Williams failed to inquire as to the height of the boom before he piloted the vessel. Alternatively, the evidence permitted a reasonable inference that Captain Williams made such an inquiry, but received either an inadequate response or no response. I find that either inference independently supports the Hearing

Officer's conclusion that Captain Williams negligently failed to independently ascertain the height of the boom.

> . . . .

> I emphasize that the master's failure to inform Captain Williams of the height of the boom did not relieve your client of his duty to operate the M/V THALASSINI MANA in a non-negligent manner. Again, Captain Williams saw the jumbo boom was in an upright position. The record reflects that he has been a Tampa Harbor pilot for 18 years and has piloted more than 5,000 ships in and out of Tampa Bay (TR 40, 50). Presumably, he has observed vessels of various heights pass under the Sunshine Skyway Bridge with various amounts of clearance on numerous occasions. Further, the record indicates that there may have been a communication barrier between Captain Williams and the Greek officers aboard the vessel. It is my opinion that a reasonable person under these circumstances would ascertain the height of the jumbo boom before attempting to pilot the subject vessel under the bridge.

(R. 360, 361)