Michael J. GREEN, Plaintiff,

v.

The .UNITED STATES COAST GUARD, and the United States Department of Transportation, an agency of the Federal Government, Defendants.

UNITED STATES of America, Defendant, Counterclaim and Third Party Plaintiff,

v.

Michael J. GREEN, in personam, Counterdefendant,

and

M/V PARGREEN SAILS, in rem, Third Party Defendant.

No. 85 C 7957.

United States District Court, N.D. Illinois, E.D.

July 31, 1986.

---

John B. Kincaid, Mirabella & Kincaid, Wheaton, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty. by Frederick H. Branding, Asst. U.S. Atty., Chicago, Ill., Lt. Ray Pelletier, U.S. Coast Guard, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

In this action, plaintiff Michael J. Green ("Green") appeals from the United States Coast Guard's ("Coast Guard") assessment of a $1,000 penalty for negligent operation of a vessel. The parties are before the court on the Coast Guard's motion for summary judgment. For the following reasons, the court finds that the penalty assessed against Green is supported by substantial evidence and grants the Coast Guard's motion for summary judgment.

### Background

On August 4, 1984, Green was piloting his pleasure boat, the "Pargreen Sails," in the area of the Adler Planetarium in the Chicago Harbor. His vessel approached the "Free Spirit," which was piloted by Richard Dyson. The wake generated by the Pargreen Sails caused the Free Spirit to toss and turn. As a result, a passenger aboard the Free Spirit was thrown from her chair, sustaining substantial injuries.

The Chicago branch of the Coast Guard Marine Safety Office investigated the incident and determined that it was caused by Green's negligent operation of the Pargreen Sails in violation of 46 U.S.C. § 2302(a)[1] (A.R. 35–39).[2] This information was transmitted to the Coast Guard Hearing Officer for the Ninth Coast Guard District. On October 10, 1984, the Hearing Officer notified Green of his intention to file civil penalty proceedings against Green (A.R. pp. 32–33). The Hearing Officer followed the procedures outlined in 33 C.F.R. § 1.07, informing Green of the alleged violation and his right to request an administrative hearing regarding the incident.

Although Green did not request a hearing, he did submit several written accounts regarding the events of August 4, 1984. These letters were drafted by Green and six of the eight passengers who had joined him that day. These letters recited Green's qualifications as a pilot of the Pargreen Sails, and the careful procedures he employed while operating his vessel. The accounts all blamed the August 4, 1984 incident on Dyson's failure to properly operate his own boat, the Free Spirit (*See* A.R. 18–31). The Hearing Officer received three letters from individuals aboard the Free Spirit which contradicted the factual account presented by Green. These letters were all added to the Hearing Officer's record, and are included in the administrative record for the purposes of review.

The Hearing Officer concurred in the Chicago Branch's initial conclusion that Green had violated 46 U.S.C. § 2302(a) (A.R. 16–17). He assessed the maximum penalty of $1,000 because of the nature of the injuries caused by Green's negligent operation of the Pargreen Sails (A.R. 17). Green appealed the Hearing Officer's de-

---

**1.** 46 U.S.C. § 2302 provides:

(a) A person operating a vessel in a negligent manner than endangers life, limb or property of a person is liable to the United States Government for a civil penalty of not more than $1,000....

(d) For a penalty imposed under this section, the vessel is also liable *in rem* unless the vessel is—

(1) Owned by the state or a political subdivision of the state;

(2) Operated principally for government purposes; and

(3) Identified clearly as a vessel of that State or subdivision.

The Coast Guard filed a third party complaint against the Pargreen Sails *in rem* on April 11, 1986.

**2.** The administrative record of the Coast Guard's determination is appended to its motion for summary judgment, and references to the record in this opinion will be cited as A.R. _____.

terminations to the Commandant of the United States Coast Guard, and the Commandant denied that appeal on August 14, 1985 (A.R. 12–13, 1–3). Green instituted the present action on September 13, 1985, seeking a review and reversal of the Coast Guard's finding of negligence.

### Standard of Review

 When reviewing a final administrative action by the Coast Guard, the court is limited to the evidence in the administrative record, and may only reverse the agency's conclusions if it finds that they are not supported by substantial evidence. *See Williams v. United States Department of Transportation*, 781 F.2d 1573, 1579 (11th Cir.1986), 5 U.S.C. § 706(2)(E).[3] As the Seventh Circuit recently emphasized, this standard accords significant weight to the agency's conclusions:

Judicial review of agency action is quite limited. Factual findings supported by substantial evidence in the record as a whole are conclusive. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464 [95 L.Ed. 456] (1951). Substantial evidence exists if the record 'contains relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217 [83 L.Ed. 126] (1938). A preponderance of the evidence is unnecessary, as long as 'there is a rational connection between the facts found and the choice made.' *Bloomer Shippers' Ass'n v. ICC*, 679 F.2d 668, 672 (7th Cir.1982).

*International Union of Operating Engineers v. NLRB*, 755 F.2d 78, 81 (7th Cir. 1985). Although a "reviewing court is not

---

**3.** Green argues that he is entitled to *de novo* review in this court, citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In that case, the Supreme Court held that *de novo* review of an agency decision is authorized by Section 706(2)(F) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(F) in only two circumstances: "when the action is adjudicative in nature and the agency factfinding procedures are inadequate," and "when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action." 401 U.S. at 415, 91 S.Ct. at 823. According to Green, this court must provide a *de novo* hearing because the Coast Guard employed inadequate factfinding procedures when adjudicating the propriety of assessing a civil penalty against him. After reviewing the record of the agency's actions, and the applicable statutes and regulations, the court finds that Green's argument regarding his alleged "right" to a *de novo* hearing in the district court is meritless.

46 U.S.C. § 2107 provides:
(a) After notice and an opportunity for a hearing, a person found by the Secretary to have violated this subtitle or a regulation prescribed under this subtitle for which a civil penalty is provided, is liable to the United States Government for the civil penalty provided. The amount of the civil penalty shall be assessed by the Secretary by written notice. In determining the amount of the penalty, the Secretary shall consider the nature, circumstances, extent, and gravity of the prohibited acts committed and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and other matters that justice requires.

The Department of Transportation promulgated detailed regulations regarding the enforcement of civil penalties in 33 C.F.R. § 1.07. These regulations have been sanctioned by Congress and the courts as sufficient to satisfy the minimum standards of due process. *See, e.g.*, H.Rep. No. 98–338, 98th Cong., 1st Sess. 132, *reprinted in* 1983 U.S.Code Cong. & Admin. News 924, 944; *Williams v. United States Department of Transportation*, 781 F.2d 1573 (11th Cir.1986). *Cf. United States v. Independent Bulk Transfer, Inc.*, 480 F.Supp. 474, 479 (S.D.N.Y. 1979). The fact that 33 C.F.R. § 1.07 does not state that the Government has the burden of proof does not mean that a *de novo* hearing is required. *See United States v. Healy-Tibbitts Construction Co.*, 713 F.2d 1469 (9th Cir.1983).

Green does not allege that the agency failed to follow the procedures set forth in 33 C.F.R. § 1.07. In fact, the record demonstrates that these regulations were followed to the letter in Green's case. Green received notice of the proposed action, 33 C.F.R. § 1.07–20(b) (A.R. 32–33); the option of a hearing prior to any penalty [which he rejected], 33 C.F.R. § 1.07–25, 1.07–55 (A.R. 32–33); a written decision from the hearing officer, 33 C.F.R. § 1.07–65 (A.R. 14–17); an appeal to the Commandant, 33 C.F.R. §§ 1.07–70, 1.07–75 (A.R. 1–3) and the right to judicial review. The fact that Green was given the option of a hearing and rejected it severely undermines this present claim that the agency did not employ sufficient factfinding procedures when it assessed the penalty against him. *See United States v. Slade, Inc.*, 447 F.Supp. 638 (E.D.Tex. 1978).

barred from setting aside an agency decision when it cannot conscientiously find that the evidence supporting that decision is substantial," it may not "displace the [agency's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo."* *NLRB v. Walton Manufacturing Co.,* 369 U.S. 404, 405, 82 S.Ct. 853, 854, 7 L.Ed.2d 829 (1962) (citations omitted).

As the foregoing authority illustrates, Green faces a formidable task in seeking to overturn the determinations of the Coast Guard. *Kaplan v. Johnson,* 409 F.Supp. 190, 192 (N.D.Ill.), *rev'd on other grounds,* 545 F.2d 1073 (7th Cir.1977). The Hearing Officer was presented with two conflicting views of the same occurrence. Green's written submission states that he is an experienced navigator who always exercises the utmost care when sailing. On the day in question, there were nine people aboard the Pargreen Sails. According to Green, August 4, 1984 was a busy Sunday on the Chicago lakefront. When he approached the entrance to Burnham Harbor, where his vessel was berthed, Green advanced the throttle from approximately 1200 RPM to approximately 3200 RPM. He states that he did not advance the throttle until they were clear of all boat traffic (A.R. 26–27).

Shortly after he increased power, Green noticed Dyson's boat, which "in a very precarious and threatening manner came roaring up behind [them] and veered off to [their] port side coming through the wake." (A.R. 27). According to Green, Dyson's boat pulled back momentarily, and then "very quickly came charging back again through [their] wake and a repeat of the prior situation ensued." (*Id.*).

After this incident, Green navigated the Pargreen Sails to its slip. Dyson's boat came down through the channel approximately ten minutes later. Green states that Dyson had difficulty navigating his boat into the slip, and he was intoxicated when he came over to talk to Green (A.R. 28). Dyson accused Green of "waking" his boat, and told him that one of his passengers had been injured as a result of Green's improper operation of the Pargreen Sails. Green denied the charges, but he did provide Dyson with his identification number and the name of his insurance company (A.R. 28).

Dyson presented the Hearing Officer with a very different account of the accident. He stated that his boat was restricted to slow speeds (approximately 1400 RPM) because he was breaking in a new engine. According to Dyson, the Pargreen Sails came up close behind him, and as he was approaching the entrance to the harbor, "the other boat increase [sic] speed enough to plane the boat [and] cut a very heavy wake." Dyson states that the Pargreen Sails came so close and at such a high speed that it created a large wake, which tossed his boat and caused one of his passengers to fall out of her chair and against the bridge and cabin door (A.R. 40).

 The mere presence of conflicting evidence does not prevent an agency's determination from being supported by substantial evidence. *Illinois Central Railroad Co. v. Norfolk & Western Railway Co.,* 385 U.S. 57, 69, 87 S.Ct. 255, 262, 17 L.Ed.2d 162 (1966). In this case, the Hearing Officer considered the evidence presented by both parties and reached the following conclusions:

It is my decision that there is substantial evidence on which to find that the PARGREEN SAILS was operated in a negligent manner, in violation of Title 46 USC 2302(a), so as to endanger life, limb, or property and a civil penalty of $1,000.00 is hereby assessed.

In arriving at the decision in this matter, I considered the following:

1. The operator of the PARGREEN SAILS stated that he increased the vessel's speed to 3200 RPM in the vicinity of the 11 or 12th Street beach, which is the approximate area of the incident.

2. He said that there were several boats in the area described by Mr. Dyson and that his first encounter with the Dyson

boat was shortly after he increased power.

3. The operator states that the Dyson boat willfully came through his wake which he considered an irresponsible act. The admission that PARGREEN SAILS was creating a wake is contrary to arguments presented by those aboard.

4. The operator of PARGREEN SAILS further stated that he was amazed and concerned because of the imminent danger of collision. However, there is no evidence that this concern caused him to take evasive action, or to stop and determine the purpose of Dyson's alleged verbal communication attempt. Apparently the operator continued on at the same speed because PARGREEN SAILS arrived at its slip some 10 or more minutes prior to the Dyson boat.

5. Whether or not the Dyson boat was operated in excess of the 1400 RPM restriction indicated is not relevant. However, the 1400 limit was indicated as sustained speed and I would assume engine breaking would permit short periods of higher RMP—which I believe was necessary to catch PARGREEN SAILS. That a lower speed was maintained is apparent by the differential in arrival time at PARGREEN SAILS' mooring.

6. The chair that the injured party was sitting on was a reference to a type of chair rather than to the operator's chair, which in a small vessel would be considered as the "Captain's Chair"

7. The discrepancy between the description of the Dysons as to the location of persons aboard the PARGREEN SAILS is noted. However, because of the fact that the complainants observed PAR-GREEN SAILS come up from astern, pass very close aboard, and then pursued PARGREEN SAILS, I do not believe that there could be any mistake in identifying PARGREEN SAILS as the offending boat.

8. Mr. Dyson's diagram shows the path of the vessels involved. His statement contends that, as his boat approached the harbor entrance, the PARGREEN SAILS was observed to increase her speed. The actual passing, which produced the wake incident, occurred after each vessel had cleared the breakwater and they were in the vicinity of Adler Planetarium.

There is substantial evidence that a person on board FREE SPIRIT was injured as the result of a wake created by PAR-GREEN SAILS.

In assessing the gravity of the violation, I considered the injury, which required medical attention and incapacitated the injured person, as an aggravating factor which warranted the maximum civil penalty.

(A.R. 16–17). Green appealed to the commandant, who concurred in the Hearing Officer's findings (A.R. 1–3).

■ This court has reviewed the entire administrative record, and finds that the Coast Guard's conclusion that Green negligently operated his boat is supported by substantial evidence.[4] The Hearing Officer apparently accepted Dyson's version of the occurrence. The administrative record contains significant undisputed facts which also support this account. For instance, the speed of the Dyson boat was limited to approximately 1400 RPMs. This speed would have made it impossible for that boat to "charge" the Pargreen Sails, which

---

4. Green argues that the Hearing Officer's decision was deficient because it failed to consider certain evidence, *i.e.*, his claim that Dyson was intoxicated. The fact that this allegation was not addressed in the Hearing Officer's conclusions does not mean that he did not consider it, however. He may have rejected the accusation as self-serving, or dismissed it because it did not appear in any of the other statements filed. In any event, there was sufficient evidence to support the Hearing Officer's acceptance of Dyson's account of the incident.

In a similar vein, Green criticizes the Hearing Officer for his failure to note that Dyson's wife, who witnessed the incident, did not submit a statement. Her failure to submit a statement does not affect the validity of the Hearing Officer's conclusions, however. Moreover, the court finds this argument incredible, considering the fact that Green's wife, who also witnessed the incident, failed to submit a written account to the Hearing Officer.

had accelerated from 1400 RPM to 3200 RPM. The disparity in speed is further evidenced by the time span between the actual docking of the two boats—the Dyson boat trailed Green by approximately ten minutes. In light of these and other facts presented to the Hearing Officer, the court concludes that the Officer's conclusions are supported by substantial evidence in the record and must be affirmed.

■ Green's remaining arguments against summary judgment are substantially similar to those presented to the Commandant who reviewed the Hearing Officer's conclusions. For instance, he argues that the Hearing Officer, who was situated in Cleveland, had no jurisdiction to adjudicate the civil penalty against him. The Coast Guard Officers are divided geographically into seventeen districts. 33 C.F.R. § 3 (1985). According to 33 C.F.R. § 1.07, all civil penalties are handled by the Coast Guard District where the alleged violation occurred. The Lake Michigan area where this incident occurred is within the Ninth District Office of the Coast Guard, which is based in Cleveland. *See* 33 C.F.R. 3.45–1 (1985). Accordingly, the court finds that Green's argument with respect to the Hearing Officer's jurisdiction to adjudicate this civil penalty is meritless.[5]

■ Green also argues that this proceeding should have been conducted in a District Court, and he should have been afforded the protections of a criminal trial. The court rejects both of these arguments as meritless. First, Congress delegated the initial determination of civil penalties to the Coast Guard. It would be contrary to

its expressed legislative intent to bypass the agency and allow adjudication in the District Courts in the first instance. *See generally United States v. Independent Bulk Transfer, Inc.*, 480 F.Supp. 474 (S.D. N.Y.1979). Second, these proceedings bear no resemblance to a criminal trial. For this reason, constitutional rights of a criminal defendant are inapplicable to these agency hearings.[6] *See Williams v. United States Dep't of Transportation*, 781 F.2d 1573 (11th Cir.1986).[7]

### Conclusion

For the reasons set forth above, the court finds that the Coast Guard's assessment of a civil penalty against Michael Green is supported by substantial evidence. Accordingly, the court grants the Coast Guard's motion for summary judgment.

---

5. Green's complaints regarding the unfairness of forcing a Chicago resident are undermined by the fact that the regulations permit a transfer of the location of the hearing at the request of a party. *See* 33 C.F.R. 1.07–45(b). In the present case, Green never requested a transfer of the hearing to Chicago; in fact, he rejected the option of a hearing and elected to submit written materials instead.

6. The court notes that the regulations provide a party with significant rights at the hearing. *See* 33 C.F.R. § 1.07–35 (request for confidential treatment); § 1.07–40 (right to counsel);

§ 1.07–45 (right to request transfer of hearings); § 1.07–50 (right to present testimony of witnesses); § 1.07–55 (right to present arguments and evidence).

7. In a similar vein, the court finds that Green's argument regarding the Hearing Officer's reliance on hearsay evidence is also meritless. 33 C.F.R. § 1.07–55(d) provides that the Hearing Officer is not bound by the strict rules of evidence. *See Williams v. United States Department of Transportation,* 781 F.2d 1573, 1578 n. 7 (11th Cir.1986).