**FORT VALLEY STATE COLLEGE, Petitioner,**

v.

**William J. BENNETT, Secretary of Education, United States Department of Education, Respondent.**

No. 87–8735.

United States Court of Appeals,
Eleventh Circuit.

Aug. 30, 1988.

Michael Brustein, Paul Levine, Brustein & Manasevit, Washington, D.C., for petitioner.

Harold B. Jenkins, U.S. Dept. of Educ., Office of General Counsel, Washington, D.C., for respondent.

Before JOHNSON, Circuit Judge,
HENDERSON,* Senior Circuit Judge,
and PITTMAN,** Senior District Judge.

JOHNSON, Circuit Judge:

Fort Valley State College ("the College")[1] petitions this Court to review a final decision of the United States Secretary of Education ("the Secretary") ordering the College to repay $488,617 in federal funds which it had received from the United States Department of Education ("the Department"). We deny the petition.

## I.

The federal funds in dispute here had been awarded to the College in 1977 as part of a five year grant of $2.7 million under the Aid to Developing Institutions Program authorized by Title III of the Higher Education Act of 1965, as amended, 20 U.S.C.A. §§ 1051 *et seq.* (1978). From May 24 through August 18, 1983, the Department's Office of Inspector General ("OIG") conducted an on-site audit at the College. In March 1985 the OIG issued an audit report which indicated that the College had failed to produce requisite documentation showing that $1,815,085 in salary and benefit costs were properly attributable to the Title III grant. The OIG also stated that the College improperly charged to its Title III grant $55,919 in salary and benefit costs not attributable to activities authorized by the grant. The OIG made several additional findings regarding funds that were not properly accounted for, and recommended that the College refund to the Secretary approximately $2.3 million.

Based on its own independent review of the OIG's audit report and the College's responses, the Department's Grants and Contracts Service ("GCS") transmitted a "final audit determination" to the College on September 30, 1985. The GCS sustained OIG's findings that more than $2.3 million of the College's claimed Title III expenditures should be disallowed. However, in the final audit determination, the GCS noted that, because of the five year statute of limitations, the College's liability was reduced to $513,539.78. GCS advised the College of its right to contest the remaining Title III audit liability by filing within thirty days an application for review by the Education Appeal Board ("the Board").

By a letter dated November 4, 1985,[2] the president of the College requested that the Board review the final determination made by GCS on Items[3] 1, 2, and 5, accounting for liability of approximately $496,000. The president conceded liability on "all other items." R3–1.

Both the College and the GCS filed briefs with the Board with respect to the three items on which the College had requested review. In addition, the College included in its brief arguments on Item 4, on which it had earlier conceded liability. The College further contended that it was entitled to a prorated reduction in the liabilities assessed because the GCS had improperly applied the five year statute of limitations back from the date of the final audit determination (September 30, 1985) rather than back from the date on which the College had received the letter from GCS (October 7, 1985).

On January 30, 1987, the College moved for summary judgment on GCS's Items 4 and 5, and on the statute of limitations issue. In an order dated March 31, 1987, the Board granted the College's motion as to Item 5, which consisted of $10,498, be-

---

\* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

**1.** Fort Valley State College is an historically black state college in Fort Valley, Georgia.

**2.** The final audit determination was apparently received by the College on October 7, 1985; therefore, the request for review was made within the allotted 30 days.

**3.** Although the OIG audit report referred to the "Findings" of liability, the GCS used the term "Items." The two terms are used interchangeably by the parties.

cause the GCS withdrew its claim on that item. The Board also agreed with the College on the statute of limitations issue, but reserved the question of how much GCS's claims should be reduced because of the limitations period. Regarding Item 4, which consisted of $11,199, the Board granted summary judgment to GCS because the College had conceded liability on this item when it filed its request for review of Items 1, 2, and 5.

On June 5, 1987, the Board issued its "Initial Decision." Elaborating on its earlier order granting partial summary judgment, it said that the College's concession as to Item 4 was necessarily final because the College had allowed the thirty day appeal period to elapse before it even raised Item 4 with the Board. Also, in accordance with its earlier order, the Board reduced Items 1 and 2 to $424,033 and $53,095, respectively, so as to comply with the statute of limitations.

Regarding Item 1, which involved salary and fringe benefit costs that were not documented as required by Title III, the Board held that the College had failed to comply with the payroll accounting measures mandated by the regulations and did not have sufficient "after the fact" documentation equivalent to that established by the regulations. The Board held that the College should refund the entire amount of Item 1, as reduced because of the statute of limitations.

As to Item 2, which involved salary and fringe benefits paid to employees for non-Title III activities, the Board noted that the College conceded that it lacked proof that $43,839 of the $53,095 challenged by the Department had been properly expended. The Board then found that the two employees who received the remaining funds under Item 2 had been compensated from Title III funds for activities not authorized by Title III. Thus, the Board concluded that the College should refund the entire amount of Item 2, as reduced by the statute of limitations.

The College's liability, as measured by the total of Items 1, 2, 4, and 6,[4] amounted to $488,617. The Board recommended that the Secretary require the College to refund this amount to the Department. The Board's Initial Decision became the Department's Final Decision because the Secretary did not modify or set aside the decision within sixty days of receipt by the College. See 20 U.S.C.A. § 1234a(d). The College now petitions for review of the Secretary's decision.

## II.

This Court reviews the Secretary's decision to determine whether the Secretary's findings are supported by substantial evidence and whether they reflect the application of proper legal standards. Bell v. New Jersey, 461 U.S. 773, 792, 103 S.Ct. 2187, 2198, 76 L.Ed.2d 312 (1983); Bennett v. Kentucky Dep't of Educ., 470 U.S. 656, 666, 105 S.Ct. 1544, 1550, 84 L.Ed. 2d 590 (1985); see 20 U.S.C.A. § 1234d. Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); Williams v. United States Dep't of Transp., 781 F.2d 1573, 1579 (11th Cir.1986). In reviewing administrative fact findings to determine whether they are supported by substantial evidence, this Court examines the entire record, including evidence opposed to the agency's position. Williams, 781 F.2d at 1579; City of Pompano Beach v. Federal Aviation Admin., 774 F.2d 1529, 1539 (11th Cir. 1985). However, we defer to the agency's findings of fact, and we must not reject an agency's choice between two conflicting views even though we may have justifiably made a different choice had the matter been before us de novo. Williams, 781

---

**4.** The College conceded Item 6 when it filed its letter requesting review. As noted above, GCS had earlier withdrawn its claim as to Item 5.

GSC had also concluded that no funds were recoverable under Item 3.

F.2d at 1579; *Pompano Beach,* 774 F.2d at 1540.

In the case at bar, Fort Valley State College first contends that the Board erred in finding that Item 1, which consisted of $424,033 in direct charges for personnel services, contained undocumented expenses. The Department's regulations require that an institution which receives Department funds maintain a payroll accounting system to document the amount of Title III funds paid to professorial and professional staff. This accounting system must consist of either (1) an adequate appointment and workload distribution system coupled with monthly reviews by supervising officials, or (2) a monthly system whereby supervising officials certify an employee's work after the fact. 34 C.F.R. § 74, App. D, Part I, J.7.b. & d. The College does not dispute that it failed to comply with these regulatory payroll accounting requirements.[5] However, the College argues that the Board incorrectly ruled that Fort Valley had also failed to provide sufficient "alternative, equivalent, or contemporaneous documentation" for its expenditures.

A previous Final Decision of the Department held that an institution that fails to comply with the regulatory payroll requirements may retain its Title III funds if it can demonstrate by alternative, equivalent, or contemporaneous documentation that the expenditures were appropriate. *See Appeal of Albany State College,* No. 41(173)84 (Education Appeal Board Nov. 3, 1986). In the present case, the Board "agree[d] with the principles enunciated" in *Albany State,* R34–4, but concluded that the "voluminous, alternative after-the-fact proof that counsel for Fort Valley" provided was not a reasonable substitute for the approved institutional payroll system that the College should have maintained. *Id.* at 4, 6.

■ As alternative proof, the College submitted: (1) employee affidavits, executed in 1986 or 1987, that described the breakdown of each employee's salary between Title III activities and other college responsibilities; (2) certification forms covering three month periods of employment; and (3) "Attachment 11," a computer printout of fiscal year earnings of each employee. The Board evaluated this evidence. First, it stated that the affidavits, executed four to six years after the relevant period of employment, were vague, conclusory and, at times, contradictory. The Board doubted their "veracity and credibility." *Id.* at 5. Second, the forms entitled "Monthly After the Fact Certification of Labor" were quarterly, not monthly reports, and those that were dated were executed four to five years after the period of employment certified. The Board stated that they were "a poor and not very convincing substitute for the type of contemporaneous record keeping required by statute and regulations." *Id.* Third, the Board found that Attachment 11, which was entitled "Detail Fiscal Year Earnings By Employee By Account Code," was the only document that could be considered contemporaneous or equivalent to the records required by the regulations. Yet the Board stated that Attachment 11 did not include an account key by which to determine which activities or grants were charged. Taken in sum, the Board found the College's documentation to be insufficient to maintain its expenditures.

On appeal, the College attacks the Board's failure to find Attachment 11 to be sufficient alternative documentation. It

---

5. The College asserts that it did comply with the regulations insofar as its secretarial employees were concerned. To prove this claim, the College supplied approximately seven time sheets depicting hours worked during certain pay periods. These time sheets were included with the approximately 100 attachments submitted by the College with its brief to the Board. Although these time sheets were signed by supervisors, they were not dated. Therefore, it is impossible to determine whether they are con-

temporaneous records. In addition, the time sheets do not indicate that the secretaries were engaged in activities authorized by Title III. They merely indicate the department to which each secretary was assigned. Furthermore, these time sheets cannot satisfy the regulatory requirements because, although they may arguably be time and attendance records, they are not payroll distribution records. *See* 34 C.F.R. § 74, App. D, Part I, J.7.d.

claims that a "key" to Attachment 11 was submitted to the Board as an appendix to the College's administrative reply brief. This "key" explained what the account code numbers on Attachment 11 represented. Because the Board did not consider this key, the College argues that the Board's decision cannot be based on substantial evidence.

Certainly if the Board ignores significant relevant evidence, its decision cannot be a rational one. *See Manasota–88, Inc. v. Thomas,* 799 F.2d 687, 691 (11th Cir.1986) (reviewing court must determine whether the agency "considered the relevant factors and articulated a rational connection between the facts found and the choices made"). However, the Secretary contends that the College's proffered "key" was not part of the College's contemporaneous evidence. Instead, it was an explanation of Attachment 11 provided by the College's counsel in response to an argument made in GCS's brief before the Board. In fact, Dr. W. Jean Porter of the College's staff wrote a letter to the College's counsel in which she said that she could not find a "key, legend, [or] dictionary" to interpret the ledger sheets. R18–C3. Although she then explained what the codes in Attachment 11 represented, the Board could have reasonably concluded from the circumstances that there was no key and that Porter's explanation was merely developed for litigation.

The Board's conclusion that there was no key need not be dispositive of the issue before this Court, however. Fort Valley's argument concerning the key assumes that, had the Board scrutinized this document, it would have found that Attachment 11 constituted sufficient alternative documentation to fulfill the regulatory requirements. Yet, the Board's decision did not imply that this was the case. The Board stated that Attachment 11 was the only document offered by the College that could be considered contemporaneous or equivalent to that required by statute. The Board did not conclude that Attachment 11

would justify Fort Valley's expenditure of Title III funds. Attachment 11 merely demonstrated that the College had in fact charged certain salary and fringe benefit costs against its Title III grant, but the issue before the Board was whether the College had provided sufficient documentation to support its assertion that the charging of these costs was appropriate. *See* 20 U.S.C.A. § 1234a(b). Even if the College is correct that the Board should have examined Attachment 11 in more detail, our examination of the record does not suggest that the Board's decision lacked substantial evidentiary support. Therefore, the Board's failure to examine the so-called "key" does not require a remand.

The College next contends that the Board's failure to refer in its decision to contemporaneous time sheets of the Fort Valley secretarial staff requires remand. Among the more than 100 attachments that the College filed with its brief to the Board, it supplied approximately seven time sheets showing the hours that some secretaries worked during various pay periods. The College argues that the Board's failure to discuss the relevance of these time sheets violated the principle that "the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *Securities & Exchange Comm'n v. Chenery Corp.,* 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943); *Amoco Production Co. v. Nat'l Labor Relations Bd.,* 613 F.2d 107, 111 (5th Cir.1980). However, the Board stated that it was "not convinced by any of the documentation of individual Fort Valley employees."[6] R34–6. Thus, the Board implicitly addressed the individual secretarial time sheets and rejected them. This complies with the dictates of *Chenery Corp.,* and judicial deference to this agency finding is consistent with this Court's duty to refrain from re-weighing the evidence and re-examining the credibility choices made by the fact finder. *See Pompano Beach,* 774 F.2d at 1540.

The College's argument would require the Board to provide an exhaustive written

---

**6.** The Board also noted that it was "puzzled" by the fact that GCS sought a refund of $432,185, but Fort Valley submitted "justification" in the amount of $613,393.

examination of each document filed by the parties. In support of this position, the College cites *Tangipahoa Parish School Bd. v. United States Dep't of Educ.*, 821 F.2d 1022 (5th Cir.1987), in which the Fifth Circuit remanded a case to the Department because the final decision ordering a refund of federal funds did not provide "an appropriate articulation of all factors weighed in the analysis and disposition of that determination." *Id.* at 1031. However, *Tangipahoa* did not hold that the Board must undertake a written analysis of each document in evidence. Because the Board articulated the factors that weighed in its analysis in the instant case, the Board's action does not conflict with *Chenery Corp.* or *Tangipahoa.* Moreover, the Board's findings are supported by substantial evidence.

### III.

The College next argues that the Department's refund order is disproportionate to any federal interest that was infringed by the College's accounting errors. The College relies on *Tangipahoa* to support its claim that the amount required to be refunded should be reduced.

In *Tangipahoa*, the Department demanded that a local school board refund all federal funds expended for bilingual education. The Education Appeal Board had ruled that proportionate recovery was inappropriate, but the Fifth Circuit disagreed. *Id.* at 1030. The Court noted that "the Department did not allege bad faith or that the program was unsuccessful." *Id.* at 1031. Additionally, the children enrolled in the schools would suffer from the loss of current school funds that would result from requiring the school board to refund money to the Department. The court stated that the Board should have evaluated these factors when it ruled that full recovery of federal funds was appropriate. *Id.*

■ Fort Valley State College contends that a similar result is appropriate in the instant case because factors similar to those in *Tangipahoa* exist here. The College notes that the Department never alleged that Fort Valley acted in bad faith,

nor did the Department claim that the College's program was unsuccessful. Moreover, the College argues that, like *Tangipahoa*, current students would suffer if the full refund of Title III funds is upheld. Based on these factors, Fort Valley concludes that a proportionate recovery is a more appropriate remedy.

We reject the College's argument because it conflicts with Supreme Court and Eleventh Circuit precedent allowing the Department to recover full refunds where a grant agreement is violated. In *Kentucky Dep't of Educ.*, the Supreme Court noted that "[t]he State gave certain assurances as a condition for receiving the federal funds, and if those assurances were not complied with, the Federal Government is entitled to recover amounts spent contrary to the terms of the grant agreement." 470 U.S. at 663, 105 S.Ct. at 1549 (citing *Bell*, 461 U.S. at 791, 103 S.Ct. at 2197). The Supreme Court emphasized in *Kentucky Dep't of Educ.* that neither substantial compliance with the grant agreement nor lack of bad faith absolves a state from liability for funds that are spent contrary to the terms of the grant agreement. *Id.* 470 U.S. at 663–64, 105 S.Ct. at 1549–50.

Relying on *Kentucky Dep't of Educ.*, this Court has held that even a slight variance in compliance with a grant agreement allows the Secretary to demand a refund of all federal funds expended by the school board for the relevant period. *Florida Dep't of Educ. v. Bennett*, 769 F.2d 1501, 1502 (11th Cir.1985) (per curiam). In *Florida Dep't of Educ.*, funds were provided to local educational agencies to meet the needs of educationally deprived children in low income areas. The version of Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C.A. § 241a *et seq.* (1974) (repealed 1978), which applied in that case, stated that a local agency could receive funds only if it used state and local funds to provide, in each Title I school, services that were at least "comparable" to services provided in non-Title I schools. The Florida Department of Education failed to satisfy the "comparability" test, although its variance was slight. This

Court denied Florida's petition for review, holding that *Kentucky Dep't of Educ.* foreclosed Florida's argument that a proportionate refund was more reasonable in light of the minor breach of the grant agreement. We stated that "it is not within our province to substitute our view of a more equitable remedy for the action of the Secretary." *Florida Dep't of Educ.*, 769 F.2d at 1502.

The College argues that *Florida Dep't of Educ.* is distinguishable from the present case because the grantee in the former case violated the fundamental purpose of the grant by using federal funds on ineligible schools, whereas the College in the instant case was fulfilling the statutory purpose of its grant. By casting its argument this way, the College implies that non-needy students were receiving the benefits of the federal monies in *Florida Dep't of Educ.* This is incorrect. The Florida Department of Education did not erroneously allocate federal funds to non-needy students. The problem was that the state failed to provide students in Title I schools with sufficient state and local funds to establish "comparability" with students in non-Title I schools. The schools themselves were eligible to receive federal funds insofar as they were classified as low-income, Title I schools. Therefore, the federal funds were being spent on the population intended to be benefited by the statute. The state department of education was required to refund the federal funds because it had violated the federal grant agreement by failing to spend sufficient state and local monies on the Title I schools. Similarly, Fort Valley has been ordered to repay part of its grant because it violated the grant agreement.

In addition to adopting an incorrect factual interpretation of *Florida Dep't of Educ.*, Fort Valley relies on a putative distinction between the two cases which does not have any basis in the language of the

*Florida Dep't of Educ.* Court's opinion. In that case, this Court stated that the Department was entitled to demand a refund of federal funds solely because there was a violation (albeit slight) of the grant agreement. The Court did not discuss whether the violation of the "fundamental" purposes of the statute affected its analysis. Thus, the College's attempt to create a separate basis for the decision, and thereby to distinguish the precedent, cannot prevail here.[7]

The College's other distinctions are similarly unavailing. For example, in seeking to reduce the refund it must pay, Fort Valley attempts to trivialize its violation of the grant agreement by characterizing it as a mere accounting dispute or a record-keeping failure. The College contrasts its violation with violations at issue in cases like *Kentucky Dep't of Educ.*, which involved an actual misuse of funds. However, as suggested above, this distinction has no support in the case law or in the statutory scheme. The statute is quite clear:

> a final decision of the Board under this section upholding a final audit determination against a State or a local educational agency shall establish the amount of the audit determination as a claim of the United States *which the State or the local educational agency shall be required to pay to the United States....*

20 U.S.C.A. § 1234a(e) (emphasis added). Nothing in the statute authorizes this Court to adjust the amount of the refund depending on the Court's view of the equities involved. Therefore, the College's attempt to reduce its refund must fail.

### IV.

■ The College next contends that it did not receive a fair administrative hearing because it was prevented from litigating the Department's Item 4 claim for $11,199. The College conceded liability on this claim when it requested that the Board

7. The College also argues that the Department's attempt to recapture federal funds because of Fort Valley's administrative deficiencies does violence to the purpose of Title III. Title III seeks to rectify administrative inadequacies; therefore, the College concludes that the Depart-

ment should not be allowed to seek a refund of the federal grant as a result of administrative failures. While this view may have some intuitive appeal, there is no support for this position in the case law or in the statutory scheme.

review three other issues raised in the final audit determination. The College claims that the Board has construed the requirements for filing an appeal too strictly and has bound Fort Valley to a decision made without the advice of counsel.

An application for review must be filed within thirty days of the grantee's receipt of the final audit determination. 20 U.S.C. A. § 1234a(b); 34 C.F.R. § 78.13(c). The grantee's application must identify the issues and facts in dispute and state the appellant's position. 34 C.F.R. § 78.13(b). In this case, the president of the College wrote the letter requesting the appeal as to some issues and explicitly conceding others. Even if we cannot assume that a college president should be able to determine what the College desires to appeal, we can expect that such a person should have known to consult counsel for advice on how to proceed.[8]

The College argues that the amendment of pleadings in administrative adjudications is accepted practice. *Mineral Indus. & Heavy Constr. Group v. Occupational Safety & Health Review Comm'n*, 639 F.2d 1289, 1292 (5th Cir. Unit A Mar. 1981). However, the present case involves more than an amendment to the pleading. The College conceded liability on this issue. There is no reason why it should be allowed to ignore that concession. Even if Fort Valley should be permitted to recant its concession, it offers no justification to allow it to pursue an issue which it failed to appeal within the required thirty days. Consequently, this claim fails.

The College also asserts that the administrative hearing was unfair because the Board developed no analysis to support its decision. Fort Valley contends that the Board should have discussed the evidence concerning each of the thirty-four employees involved, and that the failure to do so means that the decision is not supported by an "articulation of all factors weighed in the analysis and disposition" of the appeal.

*Tangipahoa,* 821 F.2d at 1031. This last argument is merely a repetition and combination of arguments raised earlier in the College's brief. Like those earlier contentions, this one fails.

## V.

In sum, the Board's factual findings, as adopted by the Secretary, are supported by substantial evidence and reflect the application of proper legal standards. *Bell,* 461 U.S. at 792, 103 S.Ct. at 2198. Accordingly, we DENY the petition for review.

---

8. The record does not indicate whether the president of the college had the benefit of counsel in responding to the final audit determination. Fort Valley states that he did not have legal assistance, but the College offers no reason to excuse the president's failure to seek legal advice.