LANDRUM (UNITED STATES v.). See Case No. 15,558.

---

## Case No. 8,041.

### In re LANDSBERG.

[11 Int. Rev. Rec. 142, 150.]

District Court, E. D. Michigan. April 26, 1870.

CUSTOMS LAWS — LIMITATION OF SUITS AND PROSECUTIONS — REPEAL OF ACTS.

[1. The effect of the act of March 3, 1863 (12 Stat. 741, § 14), is to subject all suits and prosecutions for the recovery of penalties and forfeitures arising under the customs laws, and all crimes arising under said laws, to a five-years limitation of action or prosecution.]

[Cited in U. S. v. Maillard, Case No. 15,709.]

[2. The act of August 30, 1842 (5 Stat. 565, § 19), relating to smuggling, and the act of March 3, 1823 (3 Stat. 782, § 2), relating to receiving, concealing, etc., smuggled goods, are repealed by Act July 18, 1866 (14 Stat. 188, § 42).]

[Cited in U. S. v. Merriam, Case No. 15,759; U. S. v. Chong Sam, 47 Fed. 886.]

On the 16th day of March, 1870 [Adolph] Landsberg was arrested and brought before Commissioner Wm. D. Wilkins, on a warrant charging him with having, in the spring, summer and fall of 1864, and in the winter of

1865, smuggled a quantity of whiskey, and also during the same time having received, concealed, etc., the same whiskey, knowing the same to have been smuggled. The case is now before the district judge, sitting in chambers, on the returns to writs of habeas corpus and certiorari.

Alfred Russell, for petitioner.

A. B. Maynard, U. S. Dist. Atty., for the United States.

LONGYEAR, District Judge. The accused, in his petition upon which the writs were allowed, claims his discharge on two grounds: (1) That, more than five years having elapsed since the acts complained of were committed as alleged in the warrant, the prosecution is barred by the statutes of limitation. (2) That the acts of congress under which he is charged have been repealed.

The district attorney takes issue upon both these propositions, and as to the first contends that since the act of March 3, 1863 (12 Stat. 741, § 14), there has been no limitation of suits and prosecutions for the punishment of crimes, or for the collection of penalties and forfeitures arising under the customs laws. In this case, the charge of smuggling is founded on the act of August 30, 1842 (5 Stat. 565, § 19), and the charge of receiving, concealing, etc., on the act of March 3, 1823 (3 Stat. 782, § 2). By the act of 1842, the offence is declared in the act to be a misdemeanor, and punishable by fine or imprisonment, or both, in the discretion of the court. This is clearly a crime (as contradistinguished from mere penal offences or forfeitures), to be prosecuted and punished as such. By the act of 1823, the offence is not defined in terms, but, on conviction, the offender forfeits a sum double the amount or value of the goods, so received, concealed, etc. This is clearly a pecuniary forfeiture to be sued for and recovered as such.

In order to arrive at an intelligent understanding of the condition of legislation affecting the limitation of suits and prosecutions for crimes, penalties and forfeitures arising under the customs laws at the time of the enactment of the repealing act of 1863, above referred to, and of the true effect and meaning of that enactment, it is necessary to go back to the beginning, and trace the matter down to the date of that act. Previous to the act of March 2, 1799 (1 Stat. 696), there had been two customs acts passed, one in 1789 and one in 1790, each containing a limitation of three years; but neither of those acts comes in question in this case. Section 89 of the act of 1799 makes provisions for the recovery and enforcement of penalties and forfeitures accruing under the act, and at the close imposes a limitation of three years upon all actions or prosecutions to be instituted for that purpose. This continued to be the limitation until the act of March 26, 1804 (2 Stat. 290, § 3), by which it was enacted "that any person or persons guilty of any crime

arising under the revenue laws of the United States, or incurring any fine or forfeiture by breaches of the said laws may be prosecuted, tried and punished, provided the indictment or information be found, at any time within five years after committing the offence or incurring the fine or forfeiture, any law or provision to the contrary notwithstanding." This provision, relating as it does exclusively to the revenue laws, including, of course, the customs laws, supersedes and repeals the limitation imposed by the act of 1799.

This five years' limitation prescribed by the act of 1804 remained the rule, without any new enactments affecting it, or casting any doubt upon it, until the act of 1823, under which one of the offenses in this case is charged to have been committed. That act (3 Stat. 782, § 5) provides "that all penalties and forfeitures incurred by force on this act, shall be sued for, recovered, distributed, and accounted, for in the manner prescribed by an act entitled 'An act to regulate the collection of duties on imports and tonnage,' passed March 2, 1799." This provision re-enacted section 89 of the act of 1799, and is supposed to have carried with it and revived the three years' limitation of the act of 1799, and to that extent to have repealed the five years' limitation of the act of 1804; that is probably the correct construction, but still there is some room for doubt.

The act of February 28, 1839 (5 Stat. 322, § 4), provides "that no suit or prosecution shall be maintained, for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, unless the same suit or prosecution shall be commenced within five years from the time when the penalty or forfeiture accrued: provided, the person of the offender or the property liable for such penalty or forfeiture shall, within the same period, be found within the United States; so that the proper process may be instituted and served against such person or property therefor." It has been claimed for this act that it superseded and repealed by implication so much of the act of 1804, as relates to fines and forfeitures, and of course the limitation imposed by the act of 1799 as revived by the act of 1823 (see Conk. Prac. 506, note 1). Here again there was much room for doubt. The limitation acts of 1799 and 1804 related to particular subjects, viz. the one to customs only, and the other to all revenue laws, of course including customs, and it has been laid down with much force by a learned author, "that when the mind of the legislator has been turned to the details of a subject and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular and positive previous provisions, unless it is absolutely necessary to give the latter act such construction, in order that its words shall have any meaning

at all." See Sedg. St. & Const. Law, 123. It is clear that the act of 1839 had a large range of subjects upon which to operate, outside the customs and other revenue laws; and that therefore, under the rule laid down by Mr. Sedgwick, it did not repeal the acts of 1793 and 1804. The provisions of the act of 1839 were, however, broad enough to cover the cases provided for by the acts of 1799 and 1804, so far as they related to suits and prosecutions for the recovery of penalties and forfeitures; and there would be no doubt that it would have done so if those acts had never existed, or had been expressly repealed. This being the case, it certainly can make no difference whether those acts had been repealed by an express provision inserted in the act of 1839, or by some subsequent act, provided always that the act of 1839 shall have been in force at the time of such subsequent repeal. It will not do to say that because the word "fine" is used in the act of 1804 and not in the act of 1839, that therefore the provisions of the latter are not broad enough to cover the cases provided for by the former. It must be observed that in the act of 1804 the word "fine" is used as having been "incurred," as contradistinguished from "crimes," as such. It is also placed by the act in the same category with "forfeiture," and the word "penalty" is not used at all. It is perfectly clear, therefore, that the word "fine" is used in the act of 1804 in precisely the same sense as the word "penalty" in the act of 1839, and that, as used in those two acts, they mean precisely the same thing, viz.: A fixed pecuniary mulct incurred by the violation of some law. Numerous other instances can be adduced in which these words are used in the federal statutes interchangeably, and as entirely synonymous with each other. The word "fine" is not generally used in that sense, but here it clearly and undoubtedly is.

It was in this complicated condition of the limitation laws in relation to suits and prosecutions for recovery of penalties and forfeitures under the customs laws, giving rise to grave doubts and conflicting opinions as to the true construction of the act of 1839, growing out of the very existence of the acts of 1799 and 1804 upon the statute books, unrepealed by any express enactment, that the act of March 3, 1863 (12 Stat. 741, § 14), was passed, expressly repealing those acts so far as they "impose any limitation upon the commencement of any action or proceeding for the recovery of any fine, penalty or forfeiture incurred by reason of the violations of any law of the United States relating to the importation or entry of goods, wares or merchandise." Here again the word "fine" is evidently used with direct reference to its use in the act of 1804, and of course in the same sense.

Can there be any doubt then what was the object, intent and effect of the repealing act of 1863? The evil to be remedied was the existing complications and doubts. The result sought was the removal of these complications and doubts; and to simplify and render harmonious the various enactments upon the subject then under consideration. If congress had intended a general repeal they would of course have said so in so many words. Therefore, the effect of the repealing act of 1863 is to subject all suits and prosecutions for the recovery of penalties and forfeitures arising under the customs laws, pecuniary or otherwise, to the five years' limitation provided by the act of 1839: and all prosecutions for crimes arising under said laws it leaves to the like limitation of five years provided by the act of 1804, the only difference being that in the case of penalties and forfeitures the statute does not run as against persons and property concealed or beyond the reach of process (see Conk. Prac. 506, note 1), taking a similar view as to the object and intent of the act of 1862, also U. S. v. Shorey [Case No. 16,282].

In this view of the question it is unnecessary to consider whether this prosecution is for punishment of a crime, or for the recovery of a penalty or forfeiture, or both (as is really the case), because in either case more than five years having elapsed since the offence was committed and the forfeiture accrued, the prosecution is barred in the one case by the act of 1804 and in the other by the act of 1839. Every offence against the customs laws, so far as judicial proceedings for their enforcement are concerned, belongs to some one of the following classes: (1) Crimes, punishable as such by fine and imprisonment. (2) Forfeitures, carried into effect by seizure, condemnation, and sale of specific property. (3) Pecuniary penalties, recoverable by action (see 1 Abb. U. S. Prac. 569), all of which are clearly within the provisions of the one or the other of the acts last above named.

It was contended by the learned district attorney that the act of 1839 has for its sole object the conferring of jurisdiction upon the state courts of suits and prosecutions, civil in form, for the recovery of penalties and forfeitures, and that the limitation provided by said act consequently related to such civil suits alone and not to prosecutions criminal in form. A moment's glance at the two sections (3 and 4) taken together, will show that section 4, providing the limitation, has a much broader range than that contended for. Section 3 confers jurisdiction upon the state courts, concurrent with the federal courts, of suits for the recovery of "all pecuniary penalties and forfeitures accruing under the laws of the United States." Section 4 provides "that no suit or prosecution shall be maintained for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, unless the same suit or prosecution

shall be commenced within five years from the time when the penalty or forfeiture accrued." No suit or prosecution can be brought or maintained under section 3 in a state court for the recovery of a forfeiture in rem; and yet all such suits or prosecutions are clearly covered by section 4. While section 3, therefore, is limited in its scope and application, section 4 is general, and includes all cases in the class of subjects to which it relates.

The conclusion above arrived at on the first point, would dispose of the case without the necessity of deciding the second, viz.: that the acts of congress under which the accused is charged have been repealed, but as that point is legitimately raised in the case, and as it presents a question of considerable importance, which may hereafter arise in other cases, I shall proceed to consider it.

It is contended by the learned district attorney that the act of July 18, 1866 (14 Stat. 188, § 43, last clause), does not repeal the provisions of the acts of 1823 (3 Stat. 781, § 2) and 1842 (5 Stat. 565, § 19), under which the charges in this case are brought. I have come to the opposite conclusion, and must hold that those provisions are repealed by the act of 1866. Section 43, of the act of 1866, above cited, after naming several acts specifically, closes as follows: "And all other acts and parts of acts conflicting with, or supplied by, this act, be and the same are hereby repealed." The provisions of the acts of 1823 and 1842 above cited, clearly conflict with and are supplied by section 4 of the act of 1866 (14 Stat. 179), and are therefore repealed by the above express provision, as well as by implication. Section 44, of the act of 1866 (14 Stat. 188), provides "that the provisions of this act shall not be deemed to affect any action or proceeding or indictment pending at the time this act shall take effect, but the same shall be tried and disposed of, and judgment or decree executed, as if this act had not been passed."

The repeal of the acts of 1823 and 1842 as qualified by section 44 above quoted, effectually wiped out and obliterated all crimes, penalties, and forfeitures which may have arisen or accrued under those acts before the repeal, and those offences must be considered as if those acts had never existed, except as to actions, proceedings, prosecutions, and indictments pending at the time the repealing act took effect. See Sedg. St. & Const. Law, 129, 131, and cases cited. February 18, 1867, seven months after the act of 1866 had taken effect, congress passed a declaratory act (14 Stat. 394), providing "that the provisions of the act of 1866 shall be so construed as not to affect any right of suit or prosecution which may have accrued under any prior acts of congress repealed or supplied by said act, previous to July 18, 1866," and making further provision that all such suits or prosecutions shall be tried and

disposed of, and judgment or decree executed, as if the said act of 1866 had not been passed. It does not repeal the act of 1866, but leaves it in full force.

This act is obnoxious to two fatal objections:

(1) It is an exercise of a power purely judicial in its character. Upon a question very much like the present in the U. S. supreme court, Chief Justice Marshall clearly stated the rule as follows: "To declare what the law is, or has been, is a judicial power; to declare what the law shall be is legislative." Ogden v. Blackledge, 2 Cranch [6 U. S.] 272, 277. The previous act itself, is permitted to stand unaltered and unamended. Congress assumes the power simply to expound and construe it; a power purely and undoubtedly judicial. What the law was before the explanatory act, it was permitted to be after, and is to-day. To declare its meaning and application belongs exclusively to the judicial tribunals, and not to the legislature. It cannot be said that the act is prospective merely, and simply declares what the law shall be in the future, because by its express terms it relates exclusively to penalties and forfeitures previously accrued, and under laws which no longer had any existence. There could not be any future cases arising under those laws, from the very nature of the case. It is true that, upon a question of real doubt as to the meaning of a particular statute (which, however, is not this case), a legislative construction, if deliberately given, is entitled to much weight, although even then it is not conclusive upon the judicial tribunals. See Sedg. St. & Const. Law, 252, 253; Cooley, Const. Lim. 94; Coutant v. People, 11 Wend. 511, 513.

(2) The act of February 18, 1867, is in the nature of an ex post facto law. It relates to offences previously committed. It authorizes prosecutions and prescribes punishments for offences not punishable by any law of the land, and which, in fact, had no existence at the time the act was passed. See authorities above cited; also 1 Bish. Cr. Law, 105; Roberts v. State, 2 Overt. 423, 425; Carpenter v. Pennsylvania, 17 How. [58 U. S.] 456, 463.

The act of February 18, 1867, is therefore in conflict, first, with article 3 of the constitution, investing the courts with all judicial power; and, second, with clause 3, § 9, art. 1, prohibiting the passage of any ex post facto law; and it is therefore inoperative and of no effect.

I arrive then at the following conclusions:

(1) The prosecution in this case is barred by the limitation acts of March 26, 1804, and February 28, 1839. More than five years having elapsed since the offences are charged to have been committed.

(2) The right of the United States to prosecute for the offences charged and the offences themselves, ceased to exist on the pas-

sage of the act of July 18, 1866, repealing the acts of 1823 and 1842, under which the offences charged were committed; there being no saving clause in said repealing statute, saving the right to prosecute for offences previously committed under the laws thereby repealed.

(3) The said offences and the right to prosecute the same have not been revived and do not now exist.

(4) As the result of these conclusions, the petitioner must be discharged from arrest, and the warrant and the proceedings before the commissioner must be quashed.