17 F.3d 1453
 38 ERC 1259, 305 U.S.App.D.C. 100, 62
USLW 2549,
24 Envtl. L. Rep. 20,544
 3M COMPANY (MINNESOTA MINING AND MANUFACTURING), Petitioner,
v.
Carol M. BROWNER, Administrator of Environmental Protection
Agency and Environmental Protection Agency, Respondents.
 No. 92-1126.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 7, 1993.
Decided March 4, 1994.
Rehearing and Suggestion for Rehearing In Banc Denied May 9, 1994.
 
 Petition for Review of an Order of the Environmental Protection Agency.
 Douglas L. Wald, Washington, DC, argued the cause for petitioner. With him on the briefs were Blake A. Biles and Annette M. Lang, Washington, DC.
 Eileen McDonough, Attorney, United States Department of Justice, Washington, DC, argued the cause for respondents. With her on the brief were Peter R. Steenland, Jr., Acting Assistant Attorney General, United States Department of Justice, Deborah Mack-Iacangelo, Attorney, James C. Nelson, Associate General Counsel, and Patricia A. Roberts, Assistant General Counsel, Environmental Protection Agency, Washington, DC. David A. Dana, Attorney, United States Department of Justice, Washington, DC, entered an appearance.
 David E. Menotti, Robert L. Deitz, Lynn F. Kaufmann, John N. Hanson and Cynthia A. Lewis, Washington, DC, were on the brief for amici curiae Browning-Ferris Industries, Inc. and General Motors Corporation.
 Before: BUCKLEY, GINSBURG, and RANDOLPH, Circuit Judges.
 Opinion for the court filed by Circuit Judge RANDOLPH.
 RANDOLPH, Circuit Judge:
 
 
 1
 This petition for review of the Environmental Protection Agency's assessment of civil penalties turns on the meaning of 28 U.S.C. Sec. 2462, the direct descendant of a statute of limitations enacted more than a century and a half ago. There are three questions. Does Sec. 2462 apply to administrative proceedings? If so, is a proceeding to assess a civil penalty an action for the enforcement of a penalty within Sec. 2462's meaning? If it is, does Sec. 2462's five-year period of limitations begin running only when EPA reasonably could have been expected to detect the violations giving rise to the civil penalties?
 
 
 2
 * Between August 1980 and July 1986, 3M unwittingly committed several violations of the Toxic Substances Control Act (TSCA), 15 U.S.C. Secs. 2601-2629. On July 28, 1986, after the company became aware of its transgressions, it notified EPA's compliance office. The company had learned that one of its chemicals, Chemical A,[1] was not on an EPA inventory of existing chemicals. Although 3M had believed that Chemical A came from a manufacturer in this country, the company's investigation revealed that 3M received the chemical from the manufacturer's Canadian affiliate.
 
 
 3
 At least ninety days before a new chemical may be imported, TSCA requires the importer to provide EPA with a Premanufacture Notice. 15 U.S.C. Sec. 2604(a)(1). Because Chemical A was both new and imported, 3M's importation of Chemical A without the requisite notice violated this provision. In addition, 3M's brokers wrongly certified to Customs officials that TSCA's requirements had been met.
 
 
 4
 The mishap with Chemical A spurred 3M to review its other imported chemicals. Thus, it discovered a problem with Chemical B. This chemical has the same code and the same use as another chemical listed on the inventory of existing chemicals. When 3M imported Chemical B on various occasions between July 15, 1983, and August 4, 1986, it assumed Chemical B was not new and did not require a Premanufacture Notice. Closer inspection revealed that Chemical B was not identical to the chemical on the inventory. As with Chemical A, a Premanufacture Notice had been required but not submitted, and the Customs certifications regarding compliance with TSCA were incorrect. On September 16, 1986, 3M notified EPA of the violations concerning Chemical B.
 
 
 5
 Two years later, on September 2, 1988, EPA filed an administrative complaint against 3M seeking $1.3 million in civil penalties under Sec. 16(a)(2)(A) of TSCA for 3M's failure to file Premanufacture Notices and for 3M's submitting inaccurate Customs certifications with respect to Chemicals A and B. Section 16(a)(2)(A), 15 U.S.C. Sec. 2615(a)(2)(A), provides that the EPA Administrator shall assess civil penalties for violations of the Act "by an order made on the record after opportunity ... for a hearing...."
 
 
 6
 In its answer to the complaint, 3M interposed a statute of limitations--28 U.S.C. Sec. 2462--claiming that the statute barred proceedings to impose penalties for 3M's importation of the chemicals without the requisite notices five years prior to EPA's complaint, that is, before September 1983. An EPA Administrative Law Judge ruled that no statute of limitations applied to Sec. 16(a)(2)(A) proceedings. The ALJ found 28 U.S.C. Sec. 2462 inapplicable on the grounds that it applied only to judicial proceedings; and that, in any event, civil penalty cases under Sec. 16 of TSCA were not the sort of enforcement proceedings covered by Sec. 2462. After the ALJ assessed a civil penalty of $104,720, 3M filed an administrative appeal with the EPA Chief Judicial Officer, who acts as the Administrator's delegate in these cases. The Chief Judicial Officer, "adopt[ing] and incorporat[ing]" the "applicable portions" of the ALJ's opinion, also ruled that Sec. 2462 did not apply.[2] He then assessed a penalty against 3M of $130,650. This petition followed.
 
 II
 
 7
 Any person who violates Sec. 15 of TSCA, 15 U.S.C. Sec. 2614, "shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation." 15 U.S.C. Sec. 2615(a)(1). Before the EPA Administrator assesses a penalty pursuant to Sec. 16(a)(2)(A), the alleged violator has the right to a hearing. 15 U.S.C. Sec. 2615(a)(2)(A). If the hearing results in the Administrator's issuing an order fixing liability and setting the amount of the penalty, any person "aggrieved" has thirty days to file a petition for review in a federal court of appeals. 15 U.S.C. Sec. 2615(a)(3).
 
 
 8
 While TSCA thus sets a deadline on the alleged violator's petition for judicial review, TSCA contains no provision limiting the time within which the EPA Administrator must initiate the administrative action. If there is such a time limit, it must be derived from the five-year statute of limitations, 28 U.S.C. Sec. 2462, generally applicable to civil fines and penalties, which reads:
 
 
 9
 Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.
 
 
 10
 * The most fundamental question raised by 3M's invocation of Sec. 2462 is whether the statute applies to civil penalty cases brought before agencies. The question has received little attention in judicial opinions. In one case, the government and the defendant agreed that Sec. 2462 "at least requires that any administrative action aimed at imposing a civil penalty must be brought within five years of the alleged violation." United States v. Meyer, 808 F.2d 912, 914 (1st Cir.1987). In three other cases, the courts have assumed, without discussion, that Sec. 2462 covers administrative penalty proceedings. See Williams v. United States Dep't of Transp., 781 F.2d 1573, 1578 n. 8 (11th Cir.1986); H.P. Lambert Co. v. Secretary of the Treasury, 354 F.2d 819, 822 (1st Cir.1965); The A/S Glittre v. Dill, 152 F.Supp. 934, 940 (S.D.N.Y.1957).[3] Reports of two congressional committees on unrelated legislation, cited in Meyer, also assumed that Sec. 2462 "is applicable to administrative as well as judicial proceedings." S.REP. NO. 363, 89th Cong., 1st Sess. 7 (1965); see H.R.REP. NO. 434, 89th Cong., 1st Sess. 5 (1965), U.S.Code Cong. & Admin.News 1965, pp. 1826, 1832.
 
 
 11
 It is easy to see why Sec. 2462's application to administrative cases would be taken for granted. What cannot be "entertained" after Sec. 2462's limitation period has expired is "an action, suit or proceeding." An agency's adjudication of a civil penalty case readily fits this description. In this case, EPA's regulations describe the agency's process for assessing civil penalties as a "proceeding."[4] The Administrative Procedure Act, 5 U.S.C. Sec. 554(b), which generally governs agency adjudications of civil penalties and which Sec. 16(b) of TSCA expressly incorporates, calls agency adjudications "proceedings." So does the Judicial Code, see, e.g., 28 U.S.C. Secs. 2344(1), 2347. See also 31 U.S.C. Sec. 3730(e)(3), referring to an "administrative civil money penalty proceeding."
 
 
 12
 The ALJ nevertheless ruled that Sec. 2462 related only to judicial "actions, suits or proceedings." He acknowledged that other administrative law judges had reached the opposite conclusion in TSCA penalty assessment cases.[5] Much of the ALJ's reasoning rested on the fact that Sec. 2462's predecessor spoke of "suit or prosecution," and that the 1948 revision of the Judicial Code (of which more hereafter) replacing these words with "action, suit or proceeding" intended no change in substance. The ALJ therefore believed that regardless whether EPA's assessment of a civil penalty was a "proceeding," it could not be considered a "suit or prosecution."
 
 
 13
 We wonder why not. According to the Administrative Procedure Act, agency attorneys who bring administrative complaints, including complaints for civil penalties, are performing "prosecuting functions." 5 U.S.C. Sec. 554(d). NLRB v. United Food & Commercial Workers, 484 U.S. 112, 125-26, 108 S.Ct. 413, 416-17, 98 L.Ed.2d 429 (1987), for example, holds that the NLRB General Counsel's decision to file an unfair labor practice complaint is "prosecutorial." The ATTORNEY GENERAL'S MANUAL ON THE ADMINISTRATIVE PROCEDURE ACT (at pp. 14, 55), prepared in 1947, points out that agency adjudications typically have "an accusatory flavor," and stresses the need for an agency's hearing officers to be independent of those engaged in the agency's "prosecution." The Supreme Court perceives no substantial distinction between the function performed by agency attorneys "presenting evidence in an agency hearing and the function of a prosecutor who brings evidence before a court." Butz v. Economou, 438 U.S. 478, 516, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978). Civil penalty proceedings under TSCA emulate judicial proceedings: a complaint is brought, the defendant answers, motions and affidavits are filed, depositions are taken, other discovery pursued, a hearing is held, evidence is introduced, findings are rendered and an order assessing a civil penalty is issued. 40 C.F.R. Secs. 22.13-26. When that sequence of events takes place in a court, we have no trouble calling it a "prosecution," although the modern trend is to reserve the description for criminal cases. When the same sequence of events plays out before an administrative agency, it too may be--and has been--designated a "prosecution."
 
 
 14
 Given the reasons why we have statutes of limitations, there is no discernible rationale for applying Sec. 2462 when the penalty action or proceeding is brought in a court, but not when it is brought in an administrative agency. The concern that after the passage of time "evidence has been lost, memories have faded, and witnesses have disappeared" pertains equally to factfinding by a court and factfinding by an agency. Order of R.R. Telegraphers v. Railway Express Agency, 321 U.S. 342, 349, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). Statutes of limitations also reflect the judgment that there comes a time when the potential defendant "ought to be secure in his reasonable expectation that the slate has been wiped clean of ancient obligations," Note, Developments in the Law--Statutes of Limitations, 63 HARV.L.REV. 1177, 1185 (1950). Here again it is of no moment whether the proceeding leading to the imposition of a penalty is a proceeding started in a court or in an agency. From the potential defendant's point of view, lengthy delays upset "settled expectations" to the same extent in either case. See Board of Regents v. Tomanio, 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980).
 
 
 15
 The ALJ also supported his ruling that no limitations period applied by invoking a maxim: statutes of limitations ought to be strictly construed in favor of the government. While this accurately recites the Supreme Court's general pronouncements, see Badaracco v. Commissioner, 464 U.S. 386, 391 (1984), there is another Supreme Court maxim, older still, a maxim specifically relating to actions for penalties and one pointing in quite the opposite direction: "In a country where not even treason can be prosecuted, after a lapse of three years, it could scarcely be supposed, that an individual would remain for ever liable to a pecuniary forfeiture." Adams v. Woods, 6 U.S. (2 Cranch) 336, 341, 2 L.Ed. 297 (1805) (Marshall, C.J.). Justice Story, sitting as a circuit justice in a civil penalty case, made the same point as Chief Justice Marshall: "it would be utterly repugnant to the genius of our laws, to allow such prosecutions a perpetuity of existence." United States v. Mayo, 26 F.Cas. 1230, 1231 (C.C.D.Mass.1813) (No. 15,754). See also H.P. Lambert Co. v. Secretary of the Treasury, 354 F.2d at 822; United States v. Maillard, 26 F.Cas. 1140, 1142 (S.D.N.Y.1871) (No. 15,709).
 
 
 16
 We therefore reject this aspect of the ALJ's construction of Sec. 2462. It is not entirely certain that the EPA's Chief Judicial Officer, whose order is the subject of our review, relied on any court-agency dichotomy in sustaining the ALJ's decision holding Sec. 2462 inapplicable. Before us, EPA has chosen not to mount an argument in favor of this portion of the ALJ's reasoning. And so we move on.
 
 B
 
 17
 If, as we have held, an administrative proceeding under Sec. 16(a)(2) of TSCA is an "action, suit or proceeding," the question remains whether it is--in the language of Sec. 2462--one "for the enforcement of" a civil penalty. EPA thinks not, because "enforcement" connotes an action to collect a penalty already imposed, whereas a proceeding under Sec. 16(a)(2) merely assesses or imposes the penalty. EPA's distinction relies on Sec. 16(a)(4), which authorizes the Attorney General to bring an action against the violator in federal district court to recover the amount, plus interest, of any civil penalty remaining unpaid after final judgment. That, EPA, says is the action for "enforcement," to which Sec. 2462's five-year limitation applies.
 
 
 18
 As against this, 3M points out that if EPA is right, then there would be no limitations period and liability might be imposed no matter how distant the violation.[6] Yet Adams v. Woods tells us that with respect to penalty actions such a situation "could scarcely be supposed." "Enforce," 3M says, merely signifies "impose," which is what EPA seeks to do when it brings a civil penalty assessment case.
 
 
 19
 Both sides cite contemporary dictionaries in support of their readings. How to choose between these competing definitions of "enforcement"? History holds the key. For more than a century, Sec. 2462's predecessors simply provided that "[n]o suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained" unless it is brought within five years "from the time when the penalty accrued."[7] The word "enforcement" did not appear in the statute until the comprehensive revision of the Judicial Code, completed in 1948. The Reviser's Notes on the rewriting of Sec. 2462's predecessor report: "Changes were made in phraseology." H.R.REP. NO. 308, 80th Cong., 1st Sess. A191 (1947).
 
 
 20
 A long line of Supreme Court decisions compels the conclusion that the rewording did not render the new statute different in substance from the old. When the Reviser's Notes describe the alterations as changes in phraseology, the well-established canon of construction is that the revised statute means only what it meant before 1948. See, e.g., Keene Corp. v. United States, --- U.S. ----, ----, 113 S.Ct. 2035, 2041, 124 L.Ed.2d 118 (1993); Finley v. United States, 490 U.S. 545, 554, 109 S.Ct. 2003, 2009, 104 L.Ed.2d 593 (1989); Tidewater Oil Co. v. United States, 409 U.S. 151, 162, 93 S.Ct. 408, 415, 34 L.Ed.2d 375 (1972); Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 228, 77 S.Ct. 787, 791, 1 L.Ed.2d 786 (1957).
 
 
 21
 EPA's reading of Sec. 2462 therefore must be rejected. To adopt it would be to treat the Reviser's rewriting of Sec. 2462 as a modification of the statute's substance. No one could have construed Sec. 2462's immediate predecessor to mean what EPA urges. The pre-1948 version applied to any suit or prosecution "for" a penalty. Nothing restricted its operation to actions seeking to collect penalties already imposed in other proceedings, and we can discern no reason why Congress would have thought such a restriction desirable.[8] On the other hand, 3M's reading of "enforcement" to mean "imposition" is faithful to the canon recited above; it is consistent with one of the accepted definitions of "enforcement"; and it forecloses stale claims, one of the functions of a statute of limitations, since it is in the administrative proceeding that evidence is taken, findings are made and liability determined. Because assessment proceedings under TSCA seek to impose civil penalties,[9] they are proceedings for the "enforcement" of penalties and Sec. 2462 thus applies. The same result may be reached on the basis, proposed by Judge Boggs, that "assessment is a prerequisite to, and thus a part of, the measures for the enforcement of a civil penalty." Mullikin v. United States, 952 F.2d 920, 933 n. 1 (6th Cir.1991) (concurring in part and dissenting in part). "It would seem quite odd to say that the very act that initiates the actions leading to the collection of the penalty, a stream of events that must at some point be a proceeding, is not itself part of the proceeding." Id. See Yaffe Iron & Metal Co. v. EPA, 774 F.2d 1008, 1012 (10th Cir.1985), characterizing a civil penalty administrative assessment proceeding under Sec. 16(a)(2) of TSCA as an "enforcement action," a description also adopted by EPA attorneys in the administrative proceedings in this case.
 
 
 22
 Three courts of appeals, including the Sixth Circuit in the Mullikin case just cited, hold Sec. 2462 inapplicable to the assessment of penalties by the Internal Revenue Service pursuant to 26 U.S.C. Sec. 6700 or Sec. 6701.[10] In one of these cases, United States v. Capozzi, 980 F.2d 872 (2d Cir.1992), the court stated as an alternative holding[11] that it "is the collection of amounts owed, not the assessment of them, that may be properly termed 'enforcement.' " 980 F.2d at 874-75 (footnote omitted). In adopting this definition, the Capozzi court neglected to consider how the word "enforcement" came to be inserted in the statute. The court therefore never analyzed whether, in light of the Reviser's Notes, it should have given such significance to Sec. 2462's rewriting. Furthermore, the explanation the court did offer for its definition of "enforcement" does not survive close attention. The Capozzi court thought that "[p]rior to the assessment" there can be "no fine, penalty or forfeiture"; "[t]herefore, there is nothing to enforce until after the assessment is made." But if this is correct, if "enforcement" means only the collection of a previously assessed penalty and not the adjudication of liability for a civil penalty, then Sec. 2462's five-year limitations period would not apply even to federal court actions to determine penalties. In view of the history of Sec. 2462 and reasons why we have statutes of limitations, such a result is inconceivable. Indeed, Sec. 2462's application to cases in which the court first adjudicates liability and then sets the penalty or fine is unquestioned.[12]III
 
 
 23
 The remaining issue concerns the meaning of Sec. 2462's phrase "unless commenced within five years from the date when the claim first accrued." On the assumption that Sec. 2462 applies, EPA contends, and the ALJ held, that its claim for penalties "first accrued" when it discovered 3M's violations, not beforehand when the company committed those violations.
 
 
 24
 A claim normally accrues when the factual and legal prerequisites for filing suit are in place. United States v. Lindsay, 346 U.S. 568, 569, 74 S.Ct. 287, 288, 98 L.Ed. 300 (1954); Oppenheim v. Campbell, 571 F.2d 660, 662 (D.C.Cir.1978). While this appears to be a straightforward formulation, there may be complications: "The statutory period may begin either when the defendant commits his wrong or when substantial harm matures. This choice, unnecessary where the two events are simultaneous, becomes complex where considerable time intervenes; here the courts have generally looked to the substantive elements of the cause of action on which the suit is based." Note, Developments in the Law--Statutes of Limitations, 63 HARV.L.REV. at 1200. If the period always ran from the date of the wrong, actions by workers previously exposed to dangerous chemicals, for example, might be time-barred when brought years later after the workers' injuries manifested themselves. For cases involving such latent injuries or injuries difficult to detect, courts have developed the "discovery rule." We adopted the rule in Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 342 (D.C.Cir.1991), following the lead of the other courts of appeals.[13] The "discovery rule" rests on the idea that plaintiffs cannot have a tenable claim for the recovery of damages unless and until they have been harmed. Damage claims in cases involving hidden injuries or illnesses therefore are viewed as not accruing until the harm becomes apparent. The rule approved in Connors, in which we "borrowed" a local statute of limitations for a federal claim, is of this type--a "discovery of injury" rule. Connors, 935 F.2d at 341-42. Although use of the rule has not been restricted to personal injury actions, the rule has only been applied to remedial, civil claims. See supra note 13.
 
 
 25
 The rule EPA sponsors is of an entirely different sort. It is a "discovery of violation" rule having nothing whatever to do with the problem of latent injuries. The rationale underlying the discovery of injury rule--that a claim cannot realistically be said to accrue until the claimant has suffered harm--is completely inapposite. The statute of limitations on which EPA would engraft its rule is aimed exclusively at restricting the time within which actions may be brought to recover fines, penalties and forfeitures. Fines, penalties and forfeitures, whether civil or criminal, may be considered a form of punishment. See Austin v. United States, --- U.S. ----, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993). In an action for a civil penalty, the government's burden is to prove the violation; injuries or damages resulting from the violation are not part of the cause of action; the suit may be maintained regardless of damage. Immediately upon the violation, EPA may institute the proceeding to have the penalty imposed. The penalty provision of TSCA, Sec. 16(a)(1), says just that: "Any person who violates a provision of section 2614 or 2689 of this title shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation." Because liability for the penalty attaches at the moment of the violation, one would expect this to be the time when the claim for the penalty "first accrued."[14]
 
 
 26
 EPA's contrary arguments tend to disregard the limited role of the court in this case. We are interpreting a statute, not creating some federal common law. The provision before us, Sec. 2462, is a general statute of limitations, applicable not just to EPA in TSCA cases, but to the entire federal government in all civil penalty cases, unless Congress specifically provides otherwise. We therefore cannot agree with EPA that our interpretation of Sec. 2462 ought to be influenced by EPA's particular difficulties in enforcing TSCA.[15] And we cannot understand why Congress would have wanted the running of Sec. 2462's limitations period to depend on such considerations. An agency may experience problems in detecting statutory violations because its enforcement effort is not sufficiently funded; or because the agency has not devoted an adequate number of trained personnel to the task; or because the agency's enforcement program is ill-designed or inefficient; or because the nature of the statute makes it difficult to uncover violations; or because of some combination of these factors and others. In this case, EPA suggests a remand for an evidentiary hearing on such matters and proposes a test: whether, "in the exercise of due diligence," EPA should have discovered 3M's violations earlier than it did. Brief of Respondents at 38 n. 33. The subject matter seems more appropriate for a congressional oversight hearing. We seriously doubt that conducting administrative or judicial hearings to determine whether an agency's enforcement branch adequately lived up to its responsibilities would be a workable or sensible method of administering any statute of limitations. Nor do we understand how any of this relates to the reasons why we have a statute of limitations in penalty cases. An agency's failure to detect violations, for whatever reasons, does not avoid the problems of faded memories, lost witnesses and discarded documents in penalty actions brought decades after alleged violations are finally discovered. Most important, nothing in the language of Sec. 2462 even arguably makes the running of the limitations period turn on the degree of difficulty an agency experiences in detecting violations.
 
 
 27
 When we return to the statutory language and ask what Congress meant when it required actions to be brought within five years from the date when a claim for a penalty "accrued," the answer readily presents itself. The meaning of this portion of Sec. 2462 has been settled for more than a century. The word "accrued" first appeared in the 1839 version of the statute: the suit for a penalty had to be "commenced within five years from the time when the penalty or forfeiture accrued," Act of Feb. 28, 1839, ch. 36, Sec. 4, 5 Stat. 321, 322. This language was carried over in the 1874 version (Rev.Stat. Sec. 1047, 18 Stat. 193, 193 (1874), later codified at 28 U.S.C. Sec. 791 (1911)), and modified slightly (without any substantive change) in the 1948 revision to read, as it does today, "unless commenced within five years from the date when the claim first accrued." See supra note 7.
 
 
 28
 In 1839, when Congress used the word "accrued," it could not possibly have intended the word to incorporate any discovery of violation rule. Only nine years earlier, the Supreme Court had rejected a discovery rule and held that a claim accrues at the moment a violation occurs. Wilcox v. Plummer, 29 U.S. (4 Pet.) 172, 181, 7 L.Ed. 821 (1830). Other Supreme Court opinions of the era consistently used the phrase "claim accrued" to mean the time at which a cause of action first existed, not the time when the violation was first discovered. See, e.g., Meredith v. United States, 38 U.S. (13 Pet.) 486, 493-94, 10 L.Ed. 258 (1839); Bank of the United States v. Daniel, 37 U.S. (12 Pet.) 32, 56, 9 L.Ed. 989 (1838); Evans v. Gee, 36 U.S. (11 Pet.) 80, 84, 9 L.Ed. 639 (1837); New York v. Miln, 36 U.S. (11 Pet.) 102, 144, 9 L.Ed. 648 (1837) (Thompson, J., dissenting on other grounds); Montgomery v. Hernandez, 25 U.S. (12 Wheat.) 129, 133-34, 6 L.Ed. 575 (1827). In a case decided under the 1839 version of Sec. 2462, the government urged the court to hold--as EPA does here--that its claim for a forfeiture did not accrue until it discovered the violation. Maillard, 26 F.Cas. at 1143. The court rebuffed the government, ruling that the claim "did so accrue, as against the defendant in this case, when the offenses alleged were committed.... [I]gnorance does not prevent the running of the statute or the accruing of the forfeiture." Id. See also In re Landsberg, 14 F.Cas. 1065, 1067 (E.D.Mich.1870) (No. 8,041); United States v. Hatch, 26 F.Cas. 220, 224 (C.C.S.D.N.Y.1824) (No. 15,325). Since then, the term "accrued" in Sec. 2462 has been taken to mean that the running of the limitations period in penalty actions is measured from the date of the violation. United States v. Core Lab., 759 F.2d 480, 482 (5th Cir.1985); see also Smith v. United States, 143 F.2d 228, 229 (9th Cir.1944); United States v. Appling, 239 F.Supp. 185, 194-95 (S.D.Tex.1965).[16] As the Fifth Circuit put it in Core, a "review of [cases under Sec. 2462] clearly demonstrates that the date of the underlying violation has been accepted without question as the date when the claim first accrued, and, therefore, as the date on which the statute began to run." 759 F.2d at 482.
 
 
 29
 In light of the legal meaning of the word "accrued" in 1839, the retention of the word in the 1874 version of Sec. 2462, and its appearance in the current statute, we hold that an action, suit or proceeding to assess or impose a civil penalty must be commenced within five years of the date of the violation giving rise to the penalty. We reject the discovery of violation rule EPA advocates as unworkable; outside the language of the statute; inconsistent with judicial interpretations of Sec. 2462; unsupported by the discovery of injury rule adopted in non-enforcement, remedial cases; and incompatible with the functions served by a statute of limitations in penalty cases.
 
 IV
 
 30
 EPA may not assess civil penalties against 3M for any violations of Sec. 15 of TSCA allegedly committed by the company more than five years before EPA commenced its proceeding under 15 U.S.C. Sec. 2615. The petition for review is granted, and the case is remanded for further proceedings consistent with this opinion.
 
 
 31
 So Ordered.
 
 
 
 [1]
 EPA and 3M agreed to conceal the specific identity of the chemicals to protect confidential business information
 
 
 [2]
 The ALJ ruled that even if Sec. 2462 did apply, each day that 3M failed to submit Premanufacture Notices constituted a separate violation of Sec. 15 of TSCA, so that Sec. 2462 "would not operate to bar violations which first occurred more than five years prior to EPA's issuance of the complaint." We have considerable doubt about this aspect of the ALJ's opinion (see Toussie v. United States, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970); United States v. McGoff, 831 F.2d 1071, 1079 (D.C.Cir.1987)), but we pass over it. The Chief Judicial Officer did not rely on such reasoning; although 3M has presented us with an argument that its violations could not be considered continuing offenses, EPA has not defended the ALJ's contrary conclusion
 
 
 [3]
 For the moment, we put to one side three cases dealing with the unique practice of the Internal Revenue Service. See infra notes 10 & 11
 
 
 [4]
 See, e.g., 40 C.F.R. Secs. 22.01(a), 22.04(b)(2), 22.11(a) & (b). EPA's administrative complaint against 3M used the description "civil administrative action."
 
 
 [5]
 Note, Enforcement of TSCA and the Federal Five-Year Statute of Limitations for Penalty Actions, 91 MICH.L.REV. 1023, 1036 & n. 82 (1993), describes the conflicting rulings of administrative law judges with respect to whether Sec. 2462 supplies a limitations period for administrative assessment proceedings under Sec. 16 of TSCA
 
 
 [6]
 In an action by the Attorney General to recover an unpaid penalty, "the validity, amount, and appropriateness of such penalty shall not be subject to review." 15 U.S.C. Sec. 2615(a)(4)
 
 
 [7]
 The quotation in the text is taken from Revised Statutes Sec. 1047, 18 Stat. 193, 193 (1874) (later codified at 28 U.S.C. Sec. 791 (1911)):
 No suit or prosecution for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, shall be maintained, except in cases where it is otherwise specially provided, unless the same is commenced within five years from the time when the penalty or forfeiture accrued; Provided, That the person of the offender, or the property liable for such penalty of forfeiture, shall, within the same period, be found within the United States; so that proper process therefor may be instituted and served against such person or property.
 The 1874 version of Sec. 2462 replaced the slightly different one in the Act of Feb. 28, 1839, ch. 36, Sec. 4, 5 Stat. 321, 322:
 [N]o suit or prosecution shall be maintained, for any penalty or forfeiture, pecuniary or otherwise, accruing under the laws of the United States, unless the same suit or prosecution shall be commenced within five years from when the penalty or forfeiture accrued; Provided, That the person of the offender, or the property liable for such penalty of forfeiture, shall, within the same period, be found within the United States; so that proper process therefor may be instituted and served against such person or property.
 It is unclear, and unimportant, whether the ancestor of the Act of 1839 was the Act of Apr. 30, 1790, ch. 9, Sec. 32, 1 Stat. 112, 119, construed in Adams v. Wood, or a 1799 statute pertaining to the collection of duties on imports and tonnage. Act of Mar. 2, 1799, ch. 22, Sec. 89, 1 Stat. 627, 695-96. Early cases gave the nod to the 1790 law. See Stimpson v. Pond, 23 F.Cas. 101, 101-02 (C.C.D.Mass.1855) (No. 13,455); United States v. Platt, 27 F.Cas. 546, 550 (C.C.S.D.N.Y.1840) (No. 16,054a); Limitations Under Internal-Revenue Law, 14 Op.Att'y Gen. 81 (1872).
 
 
 [8]
 United States Dep't of Labor v. Old Ben Coal Co., 676 F.2d 259, 261 (7th Cir.1982), held that with respect to an action in the district court to collect a penalty previously imposed administratively, the collection claim accrues under Sec. 2462 "after the administrative proceeding has ended, a penalty has been assessed, and the violator has failed to pay the penalty." See also Crown Coat Front Co. v. United States, 386 U.S. 503, 87 S.Ct. 1177, 18 L.Ed.2d 256 (1967). Applying the five-year limitations period to administrative proceedings in which liability is determined and a penalty imposed, does not preclude also applying Sec. 2462 to later collection actions in district court, as the First Circuit recognized in United States v. Meyer, 808 F.2d 912, 914 (1987); see also United States v. Noble Oil Co., 1988 U.S.Dist. LEXIS 11526, * 5, 1988 WL 109727, * 2 (D.N.J.1988). Under TSCA, these are separate proceedings. The judicial action to collect a penalty is brought, not by the agency, but by the Attorney General, and in "such an action, the validity, amount, and appropriateness of such penalty shall not be subject to review." 15 U.S.C. Sec. 2615(a)(4)
 
 
 [9]
 TSCA itself speaks in terms of "any civil penalty which may be imposed." 15 U.S.C. Sec. 2615(a)(2)(C)
 
 
 [10]
 The majority in Mullikin, reciting the qualification in Sec. 2462--"Except as otherwise provided by Act of Congress"--ruled that "Congress has otherwise provided for a statute of limitations within the Internal Revenue Code and therefore, Section 2462 has no application." 952 F.2d at 929. The per curiam opinion in Lamb v. United States, 977 F.2d 1296 (8th Cir.1992), relied on Mullikin
 
 
 [11]
 The Second Circuit's first ground of decision in Capozzi, while consistent with our analysis, reached the opposite conclusion in light of the ex parte, non-adversarial manner in which the IRS assesses penalties:
 First, by its terms section 2462 applies only to "action[s], suit[s] or proceeding[s]." These terms implicate some adversarial adjudication, be it administrative or judicial. An [IRS] assessment of a penalty (or tax), however, is an ex parte act. It is merely the determination of the amount of the penalty and the official recording of the liability. See 26 U.S.C. Sec. 6203; Treas.Reg. Sec. 301.6203-1. Indeed, the taxpayer is not even entitled to a pre-assessment hearing....
 980 F.2d at 874 (footnote omitted). EPA penalty assessment proceedings are, by contrast, "adversarial adjudications."
 
 
 [12]
 See, e.g., United States v. Walsh, 8 F.3d 659, 662-63 (9th Cir.1993); Sierra Club v. Chevron U.S.A., Inc., 834 F.2d 1517, 1521 (9th Cir.1987); United States v. Central Soya, Inc., 697 F.2d 165, 169-70 (7th Cir.1982); United States v. Ancorp Nat'l Servs., Inc., 516 F.2d 198, 200 n. 5 (2d Cir.1975); United States v. Smith, Kline & French Co., 184 F. 532, 533 (E.D.Pa.), aff'd sub nom. Wampole & Co. v. United States, 191 F. 573, 574-75 (3d Cir.1911), cert. denied, 225 U.S. 710, 32 S.Ct. 840, 56 L.Ed. 1268 (1912); Carter v. New Orleans & N.E. R.R., 143 F. 99, 99 (5th Cir.1906); Erie Basin Metal Products, Inc. v. United States, 138 Ct.Cl. 67, 150 F.Supp. 561, 564-65 (1957); FTC v. Bonnie & Co. Fashions, Inc., 1992 U.S.Dist. LEXIS 18764, * 18 n. 8, 1992 WL 314007 * 6, 8 n. 8 (D.N.J.1992); United States v. Island Park, 791 F.Supp. 354, 367-68 (E.D.N.Y.1992); United States v. C & R Trucking Co., 537 F.Supp. 1080, 1083 (N.D.W.Va.1982); FTC v. Lukens Steel Co., 454 F.Supp. 1182, 1185 n. 2 (D.D.C.1978); United States v. Fraser, 156 F.Supp. 144, 147 (D.Mont.1957), aff'd, 261 F.2d 282 (9th Cir.1958); United States v. Covollo, 136 F.Supp. 107, 108-09 & n. 2 (D.Pa.1955); United States v. Maillard, 26 F.Cas. 1140, 1141 (S.D.N.Y.1871) (No. 15,709)
 
 
 [13]
 Dixon v. Anderson, 928 F.2d 212, 213 (9th Cir.1991); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 448 (7th Cir.1990); Corn v. City of Lauderdale Lakes, 904 F.2d 585, 586 (11th Cir.1990); Alcorn v. Burlington Northern R.R., 878 F.2d 1105, 1107 (9th Cir.1989); Jensen v. Snellings, 841 F.2d 600, 606-07 (5th Cir.1988); Alexopulos v. San Francisco Unified Sch. Dist., 817 F.2d 551, 552-53 (9th Cir.1987); Cullen v. Margiotta, 811 F.2d 698, 725 (2d Cir.1987); Suslick v. Rothschild Sec. Corp., 741 F.2d 1000, 1004 (7th Cir.1984); Nichols v. Hughes, 721 F.2d 657, 659-60 (9th Cir.1983); Trotter v. International Longshoremen's & Warehousemen's Union, 704 F.2d 1141, 1143 (9th Cir.1983)
 
 
 [14]
 The Supreme Court rejected a "discovery of violation" rule in Unexcelled Chemical Corp. v. United States, 345 U.S. 59, 73 S.Ct. 580, 97 L.Ed. 821 (1953), which held that an enforcement claim accrued at the moment of violation. The suit was for liquidated damages against a government contractor for unlawfully employing child labor. The Court held: " 'the cause of action accrued' ... when the minors were employed. That was the violation ... giving rise to the liability for liquidated damages.... A cause of action is created when there is a breach of duty owed the plaintiff. It is that breach of duty, not its discovery, that normally is controlling." 345 U.S. at 65, 73 S.Ct. at 583
 The Court rejected a discovery of the wrong rule in United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979), a civil action under the Federal Tort Claims Act. In an argument roughly analogous to the one EPA makes here, Kubrick contended that his claim accrued only upon his discovery of the "wrong," that is, only when he discovered that the acts inflicting his injury constituted medical malpractice. After discussing why the prevailing case law and the statute's legislative history were against Kubrick's position, 444 U.S. at 120, 100 S.Ct. at 357, the Court rejected his proposed rule as unworkable and contrary to the purposes of statutes of limitations. Id. at 123-24, 100 S.Ct. at 360-61.
 
 
 [15]
 EPA tells us that violations like 3M's are inherently undiscoverable and that this case involves self-reporting rules. After the incidents involved in this case, EPA instituted a new certification procedure. Under 19 C.F.R. Sec. 12.12(a), importers are now required to certify that the shipment complies with TSCA or that TSCA does not apply. The certification is sent to EPA after inspection by a customs agent. Thereafter, EPA can compare the certification with its Premanufacture Notice and inventory records. Given this certification requirement, it may be that in future cases EPA could invoke the fraudulent concealment doctrine to toll the statute of limitations. Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). At any rate, EPA's new procedure suggests that violations of the sort 3M committed are not "inherently undiscoverable." See ALM Corp. v. EPA, 974 F.2d 380, 382 (9th Cir.1992)
 
 
 [16]
 EPA describes one circuit court and two district court opinions as applications of a variant of a discovery rule in penalty enforcement cases brought pursuant to the Clean Water Act, 33 U.S.C. Secs. 1251-1376. Each court held that the five year limitations period in Sec. 2462 commenced not when the company illegally discharged waste, but when the company filed its discharge reports with EPA. Public Interest Research Group of New Jersey v. Powell Duffryn, 913 F.2d 64, 75 (3d Cir.1990); United States v. Hobbs, 736 F.Supp. 1406 (E.D.Va.1990), aff'd, 947 F.2d 941 (4th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 2274, 119 L.Ed.2d 200 (1992); Atlantic States Legal Found. v. Al Tech Specialty Steel Corp., 635 F.Supp. 284, 287-88 (N.D.N.Y.1986). None of the decisions purported to adopt any general interpretation of "accrued." Each decided only when a claim accrued under the particular provision of the Clean Water Act. The courts do not mention a discovery rule, and they most certainly do not make the running of limitations period dependent on the agency's enforcement capacity, as EPA proposes in this case. Each court simply determined that the claim before it "accrued" at a discrete time: when the reports were filed. It is unnecessary for us to agree or disagree with these opinions. It is enough to say that they do not support EPA's argument for an open-ended discovery of violation rule under Sec. 2462